**DEERE & COMPANY,**
Plaintiff–Appellee,

v.

**DEUTSCHE LUFTHANSA AKTIENGESELLSCHAFT,**
Defendant–Appellant.

No. 87–2026.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 5, 1988.

Decided Aug. 16, 1988.

John N. Romans, Curtis Mallet Prevost Colt & Mosle, New York City, for defendant-appellant.

John W. Rotunno, Bell Boyd & Lloyd, Chicago, Ill., for plaintiff-appellee.

Before CUMMINGS, FLAUM and RIPPLE, Circuit Judges.

FLAUM, Circuit Judge.

Defendant-appellant airline ("Lufthansa") damaged part of a computer owned by Deere & Company during an international shipment. Lufthansa argued that under the Warsaw Convention and Lufthansa's tariff and waybill, any liability must be determined with reference only to the weight of the damaged package ("package weight"). Deere sought and was awarded a greater amount based on the weight of the portion of the shipment whose value was affected by the damage ("affected weight"). The district court also awarded Deere prejudgment interest and imposed sanctions against Lufthansa under Federal Rule of Civil Procedure 11. We affirm the district court's ruling with the exception of its prejudgment interest award.

I.

On August 24, 1979, an IBM Model 3032 mainframe computer, contained in 14 separate packages[1] weighing a total of 15,530 lbs., was delivered to Lufthansa's Chicago facility for shipment to Frankfurt, Federal Republic of Germany. Deere had bought the computer for a total cost of $1,854,858. A Lufthansa forklift operator dropped one of the packages during preparation for loading it onto an airplane, damaging its contents. The dropped package, weighing 2,739 lbs., contained the "director frame"—the central component of the Model 3032. Despite this mishap, Lufthansa completed loading the shipment and delivered it to Frankfurt, from where it was shipped to its final destination in Mannheim. Because the director frame was the central unit of the computer and could not be repaired or replaced except by the manufacturer, damage to this component rendered the entire computer inoperable. Deere consequently incurred aggregate costs of $195,500 for shipping the director frame back to IBM, having it repaired, and leasing another computer in the interim.

Deere claimed damages from Lufthansa under the Warsaw Convention ("Convention").[2] The parties disputed two issues: the rate payable per pound of damage under the Convention, and the question of whether the value of the entire computer was impaired by the damage to the director frame. The district court found that the Convention sets a limit of $9.07 per pound[3] for lost or damaged goods. The package containing the director frame weighed 2,739 lbs.; accordingly, Deere accepted

---

1. Lufthansa issued a single air waybill for all of the packages in the shipment.

2. Convention for the Unification of Certain Rules Relating to International Transportation by Air, *opened for signature* Oct. 12, 1929, 49 Stat. 3000, T.S. No. 876 (1934), *reprinted in* note following 49 U.S.C. § 1502.
   Article 18 of the Convention provides:
   (1) The carrier shall be liable for damage sustained in the event of the destruction or loss of, or of damage to, any checked baggage or any goods, if the occurrence which caused the damage so sustained took place during the transportation by air.
   (2) The transportation by air within the meaning of the preceding paragraph shall comprise the period during which the baggage or goods are in charge of the carrier, whether in an airport or on board an aircraft, or, in the case of a landing outside an airport, in any place whatsoever.
   (3) The period of the transportation by air shall not extend to any transportation by land, by sea, or by river performed outside an airport. If, however, such transportation takes place in the performance of a contract for transportation by air, for the purpose of loading, delivery or transshipment, any damage is presumed, subject to proof to the contrary, to have been the result of an event which took place during the transportation by air.

3. Article 22(4) of the Convention, *see* note 8 *infra*, provides that damages are measured by the gold French franc. The last official United States price of gold, before the final demise of the gold standard in 1978, was $42.22 per ounce, resulting in a limit under the Convention of $9.07 per pound. Deere argued that its damages under the Convention must be calculated with reference to the much higher market price of gold. The district court disagreed, applying the last official price. The Supreme Court has subsequently affirmed this standard, *Trans World Airlines, Inc. v. Franklin Mint Corp.,* 466 U.S. 243, 104 S.Ct. 1776, 80 L.Ed.2d 273 (1984), and the issue is not before us on appeal.

$24,900 from Lufthansa without prejudice to its argument that it was owed more. Deere sought to recover $9.07 per pound for the 12,791 lbs. constituting the weight of the remainder of the shipment. Lufthansa contended that $24,900 was the limit of its liability, first arguing that the value of the whole computer was not affected, within the meaning of the Convention, by the damage to the central component. Later in the litigation, the airline stressed that its liability was limited by its tariff and waybill to the weight of the damaged package itself. Both parties thus accepted the general applicability of an "affected weight" standard; [4] Lufthansa argued, however, that in this case it was liable only for the "package weight."

In an August 9, 1984 memorandum opinion, Judge Grady ruled that Deere was entitled to the additional damages under the Warsaw Convention if it could prove that the value of the remainder of the shipment was affected by the damage to the director frame. The judge thus confirmed what both parties had explicitly assumed: that the Convention allowed Deere to recover damages for the affected weight of the shipment. The case was reassigned to Judge Rovner, who ruled on April 26, 1985 that the damage to the package containing the director frame had indeed affected the value of the rest of the shipment. The only issue remaining in the case was the resulting cost to Deere of shipping, repairing, and leasing. [5]

Lufthansa never sought reconsideration of the August 9 opinion, but after the case was reassigned to Judge Rovner the airline argued that, for reasons not now advanced on appeal, Judge Grady had erred. The airline moved for rehearing of Judge Rovner's April 26 partial summary judgment order, insisting that it had already paid Deere the limit of its possible liability. Lufthansa asserted that the director frame was a "separate part, capable of separate repair and replacement," and that damages therefore could not be calculated with reference to the weight of the entire shipment. Judge Rovner ruled that Lufthansa had "offered no argument or authority for its assertion that Judge Grady erred." [6] The court noted Lufthansa's sloppy use of authority and warned that defendant's conduct "could justify the *sua sponte* award of sanctions under Rule 11." Judge Rovner then ordered Lufthansa to respond to Deere's motion for summary judgment on the issue of the extent of Deere's damages.

Lufthansa instead filed a summary judgment motion and a "motion to strike" Deere's motion for summary judgment, on the ground that its waybill and tariff filed with the Civil Aeronautics Board precluded any recovery by Deere in excess of the package weight figure. Deere moved for sanctions. The district judge ruled that the Convention controls whenever it conflicts with any narrower liability limitation [7] and that Judge Grady had already determined that the Convention provided for an affected weight standard. The judge noted that the "multitude" of cases cited by the defendant in support of its tariff argument did not address how a tariff or waybill could prevail over the treaty. The court felt "compelled" to order Lufthansa to pay $5,756.25 of Deere's attorney's fees for persisting in making unsupported arguments that had already been rejected. Finally, the court found Deere's proof of

---

4. Deere alternatively argued for an even broader "shipment weight" standard, which in this case was equal to the "affected weight."

5. Judge Rovner held in her December 16, 1985 order that Deere's costs incurred in leasing a substitute computer were compensable consequential damages under the Convention. Lufthansa does not raise the issue of consequential damages on appeal.

6. Judge Rovner also rejected Lufthansa's arguments that a genuine issue of material fact existed as to whether the damage to the director frame affected the value of the rest of the com-

puter, and that Deere was not entitled to consequential damages.

7. Article 23 of the unamended Convention provides:

Any provision tending to relieve the carrier of liability or to fix a lower limit than that which is laid down in this Convention shall be null and void, but the nullity of any such provision shall not involve the nullity of the whole contract, which shall remain subject to the provisions of this convention.

damages unrebutted. Because these damages exceeded the maximum allowable under the affected weight standard, the court found Deere entitled to the upper limit under that standard—$140,857.10—plus prejudgment interest of $44,991.39.

Lufthansa appeals the rulings on liability, sanctions and prejudgment interest. We conclude that Lufthansa has waived the argument it now advances that the unamended Convention dictates a "package weight" standard. We also find that the district court did not abuse its discretion in awarding sanctions. We hold, however, that the court erred in awarding prejudgment interest under the Convention.

## II.

█ Lufthansa argues on appeal that Article 22(2) of the Warsaw Convention,[8] as originally adhered to by the United States in 1934, limits a carrier's liability to $9.07 for every pound of the actual package damaged. In 1955, most of the signatories of the Warsaw Convention signed the Hague Protocol[9] which amended the Convention in several respects. As part of these changes, a new Article 22(2)(b) was incorporated into the Convention. This paragraph provides that:

In the case of loss, damage or delay of part of registered baggage or cargo, or of any object contained therein, the weight to be taken into consideration in determining the amount to which the carrier's liability is limited shall be only the total weight of the package or packages concerned. *Nevertheless, when the loss, damage or delay of a part of the registered baggage or cargo, or of an object contained therein, affects the value of other packages* covered by the same baggage check or the same air waybill, *the total weight of such package or packages shall also be taken into consideration* in determining the limit of liability.

(emphasis added). The Hague Protocol amending the Warsaw Convention was never ratified or adhered to by the United States.

Lufthansa contends that the district court erred in its August 9, 1984 summary judgment order on the issue of liability. The airline suggests that the court confused the Hague Protocol with the subsequent Montreal Agreement,[10] which was signed by all major international and U.S. airlines in order to induce the United States not to denounce the Warsaw Convention. *See* 1 L. Kreindler, *Aviation Accident Law* §§ 11.01[7], 12A. The Agreement effectively altered the Convention by imposing

8. Article 22, as set out in the unamended Convention, reads:

(1) In the transportation of passengers the liability of the carrier for each passenger shall be limited to the sum of 125,000 francs. Where, in accordance with the law of the court to which the case is submitted, damages may be awarded in the form of periodical payments, the equivalent capital value of the said payments shall not exceed 125,000 francs. Nevertheless, by special contract the carrier and the passenger may agree to a higher limit of liability.

(2) In the transportation of checked baggage and of goods, the liability of the carrier shall be limited to a sum of 250 francs per kilogram, unless the consignor has made, at the time when the package was handed over to the carrier, a special declaration of the value at delivery and has paid a supplementary sum if the case so requires. In that case the carrier will be liable to pay a sum not exceeding the declared sum, unless he proves that sum is greater than the actual value to the consignor at delivery.

(3) As regards objects of which the passenger takes charge himself the liability of the carrier shall be limited to 5,000 francs per passenger.

(4) The sums mentioned above shall be deemed to refer to the French franc consisting of 65½ milligrams of gold at the standard of fineness of nine hundred thousandths. These sums may be converted into any national currency in round figures.

9. Protocol to Amend the Convention for the Unification of Certain Rules Relating to International Carriage by Air Signed at Warsaw on 12 October 1929.

10. Agreement Relating to Liability Limitations of the Warsaw Convention and the Hague Protocol, Agreement CAB 18990, approved by order E–28680 (May 13, 1966). The Montreal Agreement limits liability to each passenger for "death, wounding, or other bodily injury" to $75,000 inclusive of legal fees and costs, on all flights in or out of the United States. *See Reed v. Wiser,* 555 F.2d 1079, 1086–87 (2d Cir.1977).

strict liability and a higher damage limit for personal injury cases. Unlike the Hague Protocol the Montreal Agreement is applicable in this country, though irrelevant to this case. Essentially, Lufthansa urges on appeal that the affected weight standard clearly set forth in Article 22 after its amendment by the Hague Protocol is a significant change from, not a mere clarification of, the original intent and effect of the Convention. Therefore, Lufthansa argues, the affected weight standard is inapplicable under United States law and should not have been applied in this case. We express no opinion on the merits of this argument, because Lufthansa has waived it by not presenting it to the district court.

In an effort to manage the case expeditiously, Judge Grady urged the parties to clarify and isolate the contested issues. The first disputed issue was what price of gold should be used to calculate the dollar amount of Lufthansa's liability under Article 22(2).[11] The other issue—the one central to this appeal—was what weight would be multiplied against this price to determine Lufthansa's ultimate liability. In arguing that its liability must be limited to the weight of the director frame, Lufthansa nonetheless repeatedly accepted the affected weight standard as the proper measure of damages under the Convention.

In its May 14, 1982 memorandum in support of its motion for partial summary judgment on liability, Lufthansa conceded that damages under the Convention are payable with reference to the package damaged *except* when damage to that package affects the value of the entire shipment. It argued only that the "value" of the entire computer was unaffected by the damage to the director frame, and that therefore the affected weight "exception" did not apply in this case. Again, in its August 3, 1982 reply memorandum to Deere's motion for summary judgment on liability, Lufthansa recognized the propriety of an affected weight standard under the Convention. The airline clung to its assertion, however, that "damage to the director frame was

transitory, and affected the use, not 'value,' of the remaining parts." Lufthansa asserted that damages are recoverable under the Convention for the affected weight only where "damage to a part irretrievably affects the value of the remainder, such as a shipment of a complete set of *hand-made* glass or china." (Emphasis in original). Lufthansa confirmed its position on this point in a November 24, 1982 colloquy with Judge Grady.

> THE COURT: [M]y curbstone reaction would be that if the part that was damaged can be replaced and the whole thing will work with the replacement part that you are only entitled to the damage for the replacement part; but that, on the other hand, if by damaging one part, you have rendered the whole thing inoperable that you would be entitled to the weight of the whole thing.
>
> [COUNSEL FOR DEERE]: Your Honor, that is our position.
>
> THE COURT: Apparently there is no disagreement with that proposition of law.
>
> [COUNSEL FOR LUFTHANSA]: That is essentially the Warsaw Convention approach to it.
>
> \*   \*   \*   \*   \*   \*
>
> [Aside from the question of the applicable price of gold, the only remaining issue is] whether the entire computer was inoperative because the director frame was damaged or whether ... another director frame could have been substituted for it....

Judge Grady and Deere were therefore justifiably under the impression that Lufthansa was not arguing against the affected weight standard as a matter of treaty interpretation, but only that the remainder of the computer shipment was not affected by the damage to the director frame within the meaning of the affected weight standard. These pleadings and representations led Judge Grady to make the following findings in granting summary judgment to Deere on the issue of liability on December 30, 1982:

---

**11.** *See supra* note 3 and accompanying text.

2. Lufthansa having argued that the limitation of liability should be [calculated with reference to the weight of the entire computer shipment] only where damage to part of a shipment affects the value of the whole shipment; and

3. Lufthansa having orally requested leave to take discovery for the purpose of controverting Deere's contention that the damage to the director frame of the IBM model 3032 computer rendered the computer inoperable and thereby affected the value of the entire shipment;

IT IS HEREBY ORDERED that:

a) [Lufthansa] shall have to and including January 31, 1983 within which to [demonstrate] the basis for its contention that the damage to the director frame did not affect the value of the entire computer shipment. . . .

Lufthansa did not file a motion for reconsideration of this summary judgment order. Both parties moved for discovery on the remaining issue of whether the value of the entire computer was affected by the damage to the director frame. On April 13, 1983, during an appearance on its motion to take discovery, Lufthansa's counsel reminded the court that the only remaining issue was whether the defendant was responsible for the weight of the entire computer or only the weight of the director frame. Counsel asked to depose the IBM engineer who repaired this component in order to prove Lufthansa's contention that "the only portion of the computer that was damaged was the director frame."

Almost six months later, on October 5, Lufthansa filed a "Motion to Take Judicial Notice of the case of *Data Card Corporation et al vs. Air Express International Corporation.*" [12] Counsel attached to the motion a copy of that English trial court case, which involved the issue of cargo damage under the Warsaw Convention. The motion was not accompanied by any

memorandum indicating a change of position. It asserted only that the case "exactly" addressed the issue of what standard of damages to apply, holding that package weight was the proper measure. The court granted the motion to take judicial notice of the case. Deere responded, objecting to Lufthansa's apparent change of position. On November 1, 1983, Lufthansa responded to Deere, arguing that there was no inconsistency—Lufthansa was simply continuing to maintain that while the affected weight standard is "an accepted position," it should not be applied in this case. The court eventually issued its August 9, 1984 memorandum opinion, essentially reiterating its December 30, 1982 holding that the affected weight standard was applicable and ordering discovery to proceed on the limited issue of whether damage to the director frame in fact affected the value of the entire computer.

We hold that Lufthansa's motion to take judicial notice of the *Data Card* case was, in the context of this litigation, insufficient to preserve for appeal the argument that the unamended Convention dictates a package weight limit on liability. While *Data Card* does support the interpretation of the Convention that Lufthansa now urges, this argument was never presented to and developed before the district court. To the extent that Judge Grady may not have fully assessed the scope of Lufthansa's argument for the package weight standard, the fault is attributable to Lufthansa's trial counsel and not the court. Because Lufthansa failed to present its argument on the proper construction of the Convention to the district court, that argument is waived. [13] *Lac Courte Oreilles Band of Lake Superior Chippewa Indians v. United States Internal Revenue Service,* 845 F.2d 139, 141 (7th Cir.1988); *Chicago Litho Plate Graining Co. v. All-*

12. *Data Card Corp. v. Air Express, Int'l.,* 2 Lloyd's Rep. 81, 2 All E.R. 639 (Q.B.1983).

13. We therefore express no opinion on the question, understandably of great interest to air carriers, whether the unamended Warsaw Convention (the applicable law in the United States) limits liability to the weight of packages actually damaged or extends to the weight of all packages whose value is affected by that damage. Resolution of this issue will have to await a different case with a record that more adequately develops this point of treaty interpretation.

*state Can Co.*, 838 F.2d 927, 931 n. 4 (7th Cir.1988).

### III.

■ The district court determined that the damage to the director frame had in fact affected the value of the entire computer, and that the maximum damages recoverable under the Convention were therefore $140,857.10—the entire weight of the computer (15,530 lbs.) times the liability limit per pound converted to dollars ($9.07). Deere's allegation that it incurred damages of $195,500 remained uncontroverted.[14] The court consequently awarded Deere $115,957.10—the full amount allowable less the $24,900 Deere had already received from Lufthansa.

In addition to awarding Deere the full amount of damages allowable under the affected weight standard, the district court ordered Lufthansa to pay another $44,991.39 in prejudgment interest.[15] The court recognized that its award of prejudgment interest was controlled by the Convention. However, it adopted the Fifth Circuit's position that prejudgment interest, while not specifically mentioned in the Convention, is allowable in a cargo case because it furthers an important purpose of the Montreal Agreement: speeding settlement and recovery. *See Domangue v. Eastern Air Lines, Inc.*, 722 F.2d 256 (5th Cir.1984) (allowing prejudgment interest on a death claim); *Boehringer–Mannheim Diagnostics, Inc. v. Pan American World*

*Airways, Inc.*, 737 F.2d 456, 460 (5th Cir. 1984), *cert. denied and appeal dismissed*, 469 U.S. 1186, 105 S.Ct. 951, 83 L.Ed.2d 959 (1985) (citing *Domangue* in upholding the award of prejudgment interest in a case of cargo damage). The district court rejected the contrary position of the Second Circuit in *O'Rourke v. Eastern Air Lines, Inc.*, 730 F.2d 842 (2d Cir.1984). *See Exim Industries, Inc. v. Pan American World Airways, Inc.*, 754 F.2d 106, 109 (2d Cir. 1985) (citing *O'Rourke* in upholding a refusal to award prejudgment interest in a cargo case). The district judge felt that the Fifth Circuit's position was bolstered by the Supreme Court's subsequent reference to the speedy resolution of claims as a purpose of the Montreal Agreement, *Air France v. Saks*, 470 U.S. 392, 407, 105 S.Ct. 1338, 1346, 84 L.Ed.2d 289 (1985),[16] and because an equally divided Court had affirmed a grant of prejudgment interest under the Convention. *Mahfoud v. Eastern Air Lines, Inc.*, 17 Av. Cas. (CCH) 17,714 (W.D.La.1982), *aff'd without opinion*, 729 F.2d 777 (5th Cir.1984), *aff'd by an equally divided court*, 474 U.S. 213, 106 S.Ct. 586, 88 L.Ed.2d 522 (1985).[17]

We are unpersuaded by the factors that influenced the district court, and reject the Fifth Circuit's position in favor of the Second Circuit's reasoning in *O'Rourke*. That case stressed that the preeminent purpose of the Convention was to fix definite and uniform limits on the cost to airlines of damages sustained by their customers. *See Trans World Airlines, Inc. v. Frank-*

---

**14.** Rather than address the extent of damages in response to Deere's motion for summary judgment, Lufthansa persisted in its arguments over the proper measure of damages to be applied. It asked the court for an extension of time to address the extent of actual damages should its argument on the measure of damages be rejected. The district court rejected Lufthansa's argument, denied the extension of time to file a proper response, and accepted Deere's prima facie evidence of damage.

**15.** The court calculated interest at a rate of 5% from the date the damage was incurred. Lufthansa appeals only the decision to award prejudgment interest; we consequently express no opinion on the propriety of the rate or method of calculation employed by the district court.

**16.** The reference in *Saks* was made in another context and affords little support to Deere's contention that prejudgment interest must be allowable to further this aim of the Montreal Agreement. In rejecting a characterization of the Agreement as imposing "absolute" liability on air carriers, the Court stated:

It is true that one purpose of the Montreal Agreement was to speed settlement and facilitate passenger recovery, but the parties to the Montreal Agreement promoted that purpose by specific provision for waiver of the Article 20(1) defenses.

**17.** The Supreme Court's 4–4 affirmance in *Mahfoud* is not an authoritative precedent on the question of prejudgment interest. *See United States v. Pink*, 315 U.S. 203, 216, 62 S.Ct. 552, 558, 86 L.Ed. 796 (1942).

*lin Mint Corp.*, 466 U.S. 243, 256, 104 S.Ct. 1776, 1784, 80 L.Ed.2d 273 (1984); *Reed v. Wiser*, 555 F.2d 1079, 1089–90 (2d Cir.), *cert. denied*, 434 U.S. 922, 98 S.Ct. 399, 54 L.Ed.2d 279 (1977); Lowenfeld & Mendelsohn, *The United States and the Warsaw Convention*, 80 Harv.L.Rev. 497, 498–500 (1967). This goal is inherently incompatible with full compensation to all customers; making aggrieved airline customers whole is consequently not a primary purpose of the Convention. *See* 1 L. Kreindler, *Aviation Accident Law* § 11.01[5]. Prejudgment interest attempts to make a successful plaintiff whole by awarding him the time value of his money. It is an element of damages, which are explicitly limited by the Convention to a fixed, uniform and knowable level. *See Monessen Southwestern Ry. Co. v. Morgan*, — U.S. —, 108 S.Ct. 1837, 1842, 100 L.Ed.2d 349 (1988) ("Prejudgment interest is normally designed to make the plaintiff whole and is part of the actual damages sought to be recovered.").

Further, it is not evident to what extent the goals of the Montreal Agreement, a 1966 private agreement among air carriers which is not applicable to the property damage issue in this case, should inform our analysis of the purposes of the 1929 Warsaw Convention. In any event, as *O'Rourke* noted, even if speedy settlement was a significant goal of the Convention's signatories—and even if it was as important as fixed and uniform liability—awarding prejudgment interest under the Convention would not significantly serve that goal. Such an award would only speed the disposition of claims where the airline and customer agree on the amount of damages sustained. 730 F.2d at 852. *See* 1 L. Kreindler, *Aviation Accident Law* § 12A.08[2] at 12A–20 (1983). That airlines are willing to incur substantial attorney's fees to litigate these issues indicates that

prejudgment interest would constitute only a minor deterrent to litigation-caused delays in payment.

We hold that as part of a damage award, prejudgment interest is subject to the conditions and limits imposed under Article 24(1) of the Convention.[18] The signatories fixed a cap on liability; they did not set forth any specific provisions exempting prejudgment interest from this global damage limitation figure. *Cf.* Montreal Agreement § 1(1) (providing for a limit of $58,000 exclusive of attorney's fees, rather than a comprehensive award of $75,000, where the law of the forum state separately provides for such fees). Deere's aggregate damages, exclusive of any interest, exceeded Lufthansa's liability limit under the Warsaw Convention. We therefore vacate the portion of the district court's judgment awarding prejudgment interest to Deere.

## IV.

■ The district court also sanctioned Lufthansa under Federal Rule of Civil Procedure 11. The judge ordered the airline to pay Deere's reasonable attorneys' fees[19] incurred in (1) preparing its pleadings in opposition to Lufthansa's motions to strike and for summary judgment, and (2) appearing before the court to argue the motions. The court imposed sanctions because Lufthansa simply refused to accept Judge Grady's ruling on the applicable standard of liability, and continued to argue that its liability must be limited to the package weight without advancing either the argument it now makes or any other viable argument. Obsessed with the package weight issue, the airline failed to address the remaining issues in the case, despite the urgings and warnings of the district court. We agree that in continuing to file motions under these circumstances, Luf-

---

18. Article 24(1) in pertinent part states:
   [A]ny action for damages, however founded can only be brought subject to the conditions and limits set out in the convention....
   An award of prejudgment interest would surely be subject to the "limits" imposed under the Convention, such as the two year limitations period of Article 29 and the jurisdictional re-

quirements of Article 28. It is therefore difficult to see how such an award would not be considered damages subject to the "condition" of Article 22: that liability for goods is limited to $9.07 per pound.

19. The court awarded Deere $5,756.25 in attorneys' fees and costs on June 23, 1987.

thansa acted for an improper purpose. We therefore uphold the award of sanctions.

In ruling that the Convention required the application of the affected weight standard, Judge Grady rejected in August of 1984 Lufthansa's arguments that its waybill and tariff limited its liability to the package weight. The Convention controlled, the judge ruled, and the Convention dictated the affected weight standard. Nonetheless, Lufthansa persisted in arguing, and citing authority to the court on, the interpretation of its tariff and waybill, without addressing how such contractual provisions could prevail over (Judge Grady's interpretation of) the Convention when they conflicted. When Deere asserted that the Convention must control, Lufthansa did not explain why there was no conflict with the Convention. The court warned Lufthansa in its December 16, 1985 opinion on Lufthansa's motion for rehearing that any further conduct not directed to the issues remaining in the case would be sanctionable. Refusing to accept the disposition of the case, Lufthansa continued to insist that it was liable only for the weight of the director frame package.

Judge Rovner's imposition of sanctions in this case was proper independent of the ultimate merits of the affected weight/package weight issue. Lufthansa refused to accept Judge Grady's summary judgment ruling on liability and was simply unresponsive to the issues which remained in the case, despite the protestations of opposing counsel and warnings from the court. While arguing that Judge Grady erred, Lufthansa presented to the court no argument supporting that assertion.

██ Under the improper purpose clause of Rule 11, a party's conduct is judged by an objective standard. *Beeman v. Fiester*, 852 F.2d 206, 209–210 (7th Cir.1988); *Brown v. Federation of State Medical Boards*, 830 F.2d 1429, 1436 (7th Cir.1987). "A court must focus on objectively ascertainable circumstances that support an inference that a filing harassed the defendant or caused unnecessary delay." *National Ass'n of Gov't Emoloyees, Inc. v.*

*National Fed'n of Fed. Employees*, 844 F.2d 216, 224 (5th Cir.1988).

Lufthansa's refusal to accept its loss on the package weight issue, and its failure to articulate any colorable argument (such as the one it now makes on appeal) why it should have prevailed, taxed the court's patience. With admirable forbearance, Judge Rovner reiterated which issues remained to be addressed, and directed Lufthansa not to file any more unresponsive motions. Lufthansa's failure to heed the court needlessly multiplied the proceedings, forcing Deere to bear the cost of unnecessary additional litigation. *See Walter v. Fiorenzo*, 840 F.2d 427, 433 (7th Cir.1988). Lufthansa's filing of further unresponsive papers was an obstinate "refusal[ ] to say die," *Bailey v. Bicknell Minerals*, 819 F.2d 690 (7th Cir.1987), which unnecessarily depleted judicial resources. The district court did not abuse its discretion in determining that Lufthansa's filings caused unnecessary delay and needless increase in the cost of the litigation, and lacked any apparent legitimate purpose. *See* Schwarzer, *Sanctions Under the New Rule 11—A Closer Look*, 104 F.R.D. 181, 195 (1985). *See also Szabo Food Serv., Inc. v. Canteen Corp.*, 823 F.2d 1073, 1079 (7th Cir.1987), *cert. dismissed*, —— U.S. ——, 108 S.Ct. 1101, 99 L.Ed.2d 229 (1988) (award of fees under Rule 11 is a sanction for violating a rule of court, not unlike a contempt of court sanction); *In re TCI, Ltd.*, 769 F.2d 441, 445 (7th Cir.1985).

### V.

In summary, we affirm the district court's application of an affected weight standard because Lufthansa waived any colorable objection to its use; we vacate the award of prejudgment interest because it exceeds Lufthansa's liability limit under the Convention; and we affirm the district court's imposition of sanctions for Lufthansa's improper filings.