22 F.3d 113
 Fed. Sec. L. Rep. P 98,183, 28 Fed.R.Serv.3d 1050
 PACIFIC DUNLOP HOLDINGS, INCORPORATED, a Delaware
corporation, Plaintiff,
v.
Robert F. BAROSH, Francis X. Beaudette, Stanley N. Gaines,
et al., Defendants-Third Party
Plaintiffs-Counterdefendants-Appellees,
v.
PACIFIC DUNLOP GNB CORPORATION, a Delaware corporation, and
GNB Incorporated, a Delaware corporation, Third
Party Defendants-Counterplaintiffs,
Appeal of GARDNER, CARTON & DOUGLAS, attorneys for Plaintiff
Pacific Dunlop Holdings, Incorporated.
 Nos. 93-2200, 93-2551.
 United States Court of Appeals,
Seventh Circuit.
 Argued Jan. 3, 1994.
Decided March 4, 1994.*
Opinion April 25, 1994.
Opinion April 25, 1994.
 
 1
 Peter J. Meyer, Gordon B. Nash, Jr. (argued), Michael J. Koenigsknecht, Daniel J. Sheridan, Deena S. Newlander, Gardner, Carton & Douglas, Chicago, IL, for Pacific Dunlop Holdings, Inc., Pacific Dunlop GNB Corp., GNB, Inc. in No. 93-2200.
 
 
 2
 Peter J. Meyer, Gordon B. Nash, Jr. (argued), Michael J. Koenigsknecht, Daniel J. Sheridan, Deena S. Newlander, David J. Gilmartin, Thomas More Schippers, Gardner, Carton & Douglas, Chicago, IL, for Pacific Dunlop Holdings, Inc., Pacific Dunlop GNB Corp., GNB, Inc. in No. 93-2551.
 
 
 3
 Laurence H. Lenz, Jr., Donald E. Egan (argued), Andrew M. Varga, Paul A. Haskins, Katten, Muchin & Zavis, Chicago, IL, for defendants-appellees.
 
 
 4
 Before POSNER, Chief Judge, ROVNER, Circuit Judge, and MIHM, District Judge**.
 
 
 5
 MIHM, District Judge.
 
 
 6
 This is an appeal from the district court's award of $138,015.11 in legal fees and costs to Appellees under Federal Rule of Civil Procedure 11 and 28 U.S.C. Sec. 1927. For the reasons stated below, we reverse.
 
 I. FACTUAL BACKGROUND
 
 7
 In May 1984, the General Services Administration ("GSA") awarded GNB Batteries ("GNB") a three-year contract to supply batteries and related parts to GSA. In early 1987, GSA conducted an audit of the 1984 contract and found that GNB had failed to fully disclose to GSA the discounts GNB had offered to its commercial customers and had failed to grant GSA the equivalent discounts as required by their contract. The audit stated that GSA would conduct a further review of the 1984 contract. GNB received a copy of the GSA audit in July 1987.
 
 
 8
 In October 1987, Appellant Pacific Dunlop Holdings Inc. ("PDHI"), the Appellees (the "Management Shareholders"), and the other stockholders of GNB entered into a Stock Purchase Agreement and related documents in which PDHI bought stock in GNB. At the time of the transaction the Management Shareholders were the principal operating personnel of GNB Holdings, Inc., which owned GNB. In this stock transaction, PDHI was represented by the law firm of Gardner, Carton & Douglas ("Gardner, Carton").
 
 
 9
 Until September 1988, Defendant Arthur Richards ("Richards") was the chief operating officer of GNB's Industrial Battery Division. In January 1990, Richards learned through contacts at GNB that a federal grand jury was investigating the GSA audit. At that time, Richards no longer worked for GNB. Richards then contacted GNB's general counsel, Augustus Hipp, who confirmed the federal investigation. Hipp told Richards that Gardner, Carton was representing GNB in the investigation. Thereafter, Richards had some telephone conversations with Gardner, Carton attorneys about the status of the grand jury proceedings.
 
 
 10
 On January 2, 1991, PDHI, represented by Gardner, Carton, filed a lawsuit against the Management Shareholders alleging that the Management Shareholders had violated Section 10(b) of the Securities Exchange Act of 1934 and SEC Rule 10b-5, had committed fraud, and had breached representations and warranties in connection with the sale of their stock in GNB Holdings, Inc. PDHI claimed that the Management Shareholders had failed to disclose material facts, including the GSA audit of a battery supply contract and various environmental problems at GNB's facilities.
 
 
 11
 On May 15, 1991, the district court dismissed PDHI's fraud claims concerning the alleged environmental nondisclosures and PDHI's claim for declaratory relief. On June 28, 1991, PDHI filed an amended complaint. While Katten Muchin & Zavis, the Management Shareholders' counsel, was preparing the Management Shareholders' response to the amended complaint, it learned that Richards had spoken with Gardner, Carton during Gardner, Carton's representation of GNB in the grand jury investigation. Richards claimed that he was led to believe that Gardner, Carton was representing him because of his status as a former GNB employee. Richards also claimed that he had disclosed confidential information to Gardner, Carton regarding what he knew about the GSA audit after Gardner, Carton attorneys had assured him that no conflict of interest existed.
 
 
 12
 Based on Richards's claims regarding conversations with Gardner, Carton attorneys, the Management Shareholders filed a Motion to Disqualify Gardner, Carton on December 17, 1991. In their Motion to Disqualify, the Management Shareholders asserted that Gardner, Carton attorneys would likely be called as witnesses in the trial of the case; that Gardner, Carton had a conflict of interest with PDHI because it had negligently or recklessly failed to uncover the Management Shareholders' alleged fraud prior to the sale; and that Gardner, Carton had previously entered into an implied attorney-client relationship with Richards regarding the GSA contract. In support of these arguments, the Management Shareholders submitted the affidavits of Richards and two other persons involved in the stock transaction.
 
 
 13
 Upon receiving the Management Shareholders' Motion to Disqualify, PDHI served notices of deposition on Richards and other persons whose affidavits the Management Shareholders had filed with their Motion. Gardner, Carton also filed a motion for expedited discovery. The Motion to Expedite Discovery stated:
 
 
 14
 [PDHI seeks to] resolve defendants' Motion to Disqualify as soon as possible and ... to proceed with the depositions as soon as possible. Therefore, it requests that the court order discovery to be conducted on an expedited basis.
 
 
 15
 The district court granted PDHI's Motion to Expedite Discovery. By January 31, 1992, PDHI had completed discovery.
 
 
 16
 On February 4, 1992 at a status hearing, PDHI informed the district court that, based on the depositions taken of the Management Shareholders' affiants, including Richards, PDHI believed that the Management Shareholders' Motion to Disqualify failed as a matter of law. PDHI supposedly believed that Richards' affidavit and deposition testimony demonstrated that Richards had never provided confidential information to Gardner, Carton and had never sought legal advice from Gardner, Carton and therefore, as a matter of law, no attorney-client relationship existed. At this status hearing, PDHI notified the district court that it planned to file a brief arguing that the Motion to Disqualify should be denied "as a matter of law, so hopefully no further discovery will be necessary."
 
 
 17
 On February 7, 1992, a Katten Muchin & Zavis partner representing the Management Shareholders wrote to the lead Gardner, Carton attorney and stated that the Management Shareholders would oppose any effort by Gardner, Carton to reopen the proceedings after the district court ruled on its Motion to Disqualify.
 
 
 18
 On February 13, 1992, Gardner, Carton filed its opposition to the Management Shareholders' Motion to Disqualify. PDHI argued that Richards's own testimony established that an implied attorney-client relationship did not exist as a matter of law. Gardner, Carton did not submit any affidavits in opposition to the Motion to Disqualify. In its Memorandum in Opposition, PDHI stated that "[i]n the event the Court determines that it is unable to decide this motion as a matter of law, PDHI would request leave to file affidavits and other materials in opposition to the Motion to Disqualify."
 
 
 19
 At a status hearing on February 18, 1992, PDHI again informed the district court that PDHI was responding to the Motion to Disqualify as a matter of law. PDHI's counsel stated:
 
 
 20
 As we indicated last time we were before the Court, we think this could be deposed [sic] of as a matter of law. We have not submitted any factual information to the Court. We have simply taken the affidavits and the testimony of the three affiants and on that basis believe that this motion fails and that there is no discovery that is necessary or even relevant to this issue at this point in time.
 
 
 21
 On March 13, 1992, the Management Shareholders filed a Reply Memorandum. In a footnote of their Reply Memorandum, the Management Shareholders restated their opposition to PDHI's plan to oppose the Motion to Disqualify initially as a matter of law.
 
 
 22
 On March 18, 1992, PDHI filed a surreply in opposition to the Motion to Disqualify. PDHI responded to the Management Shareholders' argument that it was improper for Gardner, Carton to ask leave to file affidavits in the event the district court was unable to decide the Motion to Disqualify as a matter of law. PDHI's Surreply Memorandum stated in part:
 
 
 23
 On two occasions during status hearings before this Court, PDHI's counsel advised the Court that it intended to respond to the Motion to Disqualify on the basis that the evidence submitted by defendants in support of their motion was insufficient as a matter of law to warrant disqualification. On both occasions, defendants' attorneys did not object. PDHI further stated in its Memorandum in Opposition that it would request leave to file its own affidavits and evidence if the Court decides that the Motion cannot be resolved on the basis of defendants' evidence alone. PDHI so advised the Court after taking the depositions of Richards and Beaudette in the good faith belief that further discovery and multiple depositions at GCD, GNB and PDHI could be avoided as defendants had not met the appropriate legal standard.
 
 
 24
 On March 27, 1992, the Management Shareholders filed a Sur-surreply Memorandum. In their Sur-surreply, the Management Shareholders again objected to any attempt by PDHI to supplement the factual record after the district court ruled on PDHI's legal arguments.
 
 
 25
 On July 8, 1992, from the bench, the district court presented counsel for both parties with a statement of facts excerpted from its draft opinion on the Management Shareholders' Motion to Disqualify. The district court noted that PDHI's February 13, 1992 Memorandum in Opposition requested "leave to file affidavits and other material." The court then asked PDHI's counsel if there was "anything else?" PDHI's counsel again informed the court that PDHI believed the Management Shareholders' Motion to Disqualify was insufficient as a matter of law. Counsel advised the district court that if the court could not rule that the Motion was insufficient as a matter of law, PDHI would submit affidavits of Gardner, Carton attorneys. The district court then asked PDHI's counsel if affidavits of Gardner, Carton attorneys would indicate that Gardner, Carton informed Richards that it would not represent him during the grand jury proceedings. PDHI's counsel responded: "The evidence, if we are required to submit any, will absolutely, unequivocally contradict [Richards's] affidavit, which is already substantially undercut by the testimony in his deposition."
 
 
 26
 On July 10, 1992, the district court issued an opinion rejecting PDHI's contention that the Motion to Disqualify could be decided as a matter of law. The opinion stated:
 
 
 27
 [The court was] willing to provide [PDHI] and its attorneys with an opportunity to submit affidavits that respond to the affidavits submitted by the [Management Shareholders] ... If [PDHI] chooses to submit affidavits, the Court will review them and decide whether its decision to disqualify Gardner should be reconsidered.
 
 
 28
 The district court stated that it would suspend entry of the opinion "at least until ... July 14, 1992 ... [when PDHI] will inform the Court how it intends to proceed in this matter."
 
 
 29
 At a status hearing on July 14, 1992, PDHI informed the district court that it had served the affidavits of Gardner, Carton attorneys and others on the Management Shareholders. The Management Shareholders objected to the filing of the affidavits. The Management Shareholders argued that PDHI was aware of the information contained in the affidavits when the Motion to Disqualify was filed and that PDHI caused delay by not submitting the affidavits earlier. The Management Shareholders' counsel also stated:
 
 
 30
 That in the event that we have to take--depose these individuals and that Your Honor's ruling is not overturned, that we would be entitled to our costs and attorney's fees in pursuing discovery that we now have to take, including supplemental briefing.
 
 The district court responded:
 
 31
 My view on the matter is this: the procedure I have allowed here is unusual, although it was something that was specifically requested by the plaintiff in their briefs. I thought--and perhaps the error was mine--that the matter could be resolved without considering these additional matters.
 
 
 32
 The district court added that the Management Shareholders "may" be entitled to recover the costs of discovery, even if the Motion to Disqualify was denied.
 
 
 33
 On January 11 and 12, 1993, the district court held an evidentiary hearing on the Motion to Disqualify. On January 29, 1993, the district court issued an opinion denying the Management Shareholders' Motion to Disqualify. In its opinion, the district court also found:
 
 
 34
 [Gardner, Carton's] tactical decision to defend against this [Disqualification M]otion initially on a demurrer basis caused considerable delay and expense to the Management Shareholders. It is therefore appropriate that Gardner Carton pay some of the legal fees and costs [the Management Shareholders] have incurred in connection with this [Disqualification M]otion since the issuance of the Court's July 10, 1991 [sic] opinion.
 
 
 35
 On February 26, 1993, the Management Shareholders filed a Bill of Fees and Costs incurred in connection with the Motion to Disqualify after the issuance of the district court's original July 10, 1992 opinion. The Management Shareholders requested $138,015.11 in fees and costs. On March 9, 1993, PDHI and Gardner, Carton responded with a memorandum opposing the bill of fees and costs.
 
 
 36
 On April 15, 1993, the district court issued a minute order awarding the Management Shareholders $138,015.11 in fees and costs. The minute order stated in part:
 
 
 37
 There was a two stage discovery process and a two state [sic] decision process and unnecessary delay, none of which would have occurred absent plaintiff's decision to proceed as it did. It is reasonable to require payment of attendant fees and costs as a condition of the plaintiff's ability to escape from the consequences of a losing tactical choice.
 
 
 38
 On May 21, 1993, the Management Shareholders filed a Motion for Clarification regarding the April 15, 1993, opinion and asked the district court to specify which attorney was to pay the sanction. On May 26, 1993, the district court clarified its April 15 opinion and stated that the sanction was against the law firm of Gardner, Carton under Federal Rule of Civil Procedure 11 and 28 U.S.C. Sec. 1927.
 
 II. ANALYSIS
 
 39
 We hold that under the circumstances of this case, the district court's imposition of sanctions against the law firm of Gardner, Carton under Rule 11 and 28 U.S.C. Sec. 1927 was unwarranted.
 
 A. Rule 11
 
 40
 We review a district court's decision to impose Rule 11 sanctions under an abuse of discretion standard. Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 405, 110 S.Ct. 2447, 2461, 110 L.Ed.2d 359 (1990). However,
 
 
 41
 [r]eview under the abuse of discretion standard does not mean no appellate review. Rule 11 sanctions have significant impact beyond the merits of the individual case. Concerns for the effect on both an attorney's reputation and for the vigor and creativity of advocacy by other members of the bar necessarily require that we exercise less than total deference to the district court in its decision to impose Rule 11 sanctions. Mars Steel Corp. v. Continental Bank N.A., 880 F.2d 928, 936 (7th Cir.1989) (en banc) (quoting In re Ronco, Inc., 838 F.2d 212, 217-18 (7th Cir.1988))
 
 
 42
 We review the record to determine whether the award of sanctions is supported by the articulated reasons of the district court. In re Ronco, Inc., 838 F.2d at 218.
 
 
 43
 Under Rule 11, attorneys must sign pleadings, motions, or other papers. The attorney's signature certifies that the documents are well grounded in fact and in law or present a good faith argument for the extension, modification or reversal of existing law. The attorney's signature also warrants that the document is not presented for an improper purpose, such as to harass or cause unnecessary delay or needless increase in the cost of litigation. Fed.R.Civ.P. 11.
 
 
 44
 The district court did not find that any of Gardner, Carton's[1] pleadings, motions, or other papers filed with the district court were not reasonably based in law or fact. Instead, the district court stated that "Gardner's tactical decision to defend against this motion initially on a demurrer basis has caused considerable delay and expense to the Management Shareholders." District Court Memorandum Opinion and Order of January 29, 1993, p. 10. The district court's decision to award sanctions against Gardner, Carton was based on its finding that Gardner, Carton's bifurcated procedure of defending against the Motion to Disqualify was done for the purpose of unnecessarily delaying the litigation. We disagree.
 
 
 45
 We determine whether a party's conduct was imposed for an improper purpose by an objective standard. Deere & Company v. Deutsche Lufthansa Aktiengesellschaft, 855 F.2d 385, 393 (7th Cir.1988); FDIC v. Tekfen Construction & Installation Co., 847 F.2d 440, 442 (7th Cir.1988) (The inquiry is one of "objective reasonableness under all the circumstances of the case."). We believe that it was objectively reasonable for Gardner, Carton to initially defend the Motion to Disqualify as a matter of law. In initially challenging the Motion to Disqualify as a matter of law, Gardner, Carton did not violate a Federal Rule of Civil Procedure, local rule, or court order. Gardner, Carton did not ignore warnings of the district court. Compare Deere & Co. v. Deutsche Lufthansa, 855 F.2d 385 (7th Cir.1988) (Rule 11 sanctions imposed when counsel ignored district court's warnings and needlessly multiplied proceedings). In fact, the district court implicitly allowed Gardner, Carton's procedure. In discussing Gardner, Carton's conduct after the fact, the district court stated:
 
 
 46
 The procedure I have allowed here is unusual, although it was something specifically requested by the plaintiff in their briefs. I thought--and perhaps the error was mine--that the matter could be resolved without considering these additional matters.
 
 
 47
 When a district judge admits that he/she may have made an error in allowing a certain procedure, attorneys should not suffer the consequences.
 
 
 48
 On four separate occasions before the district court awarded sanctions, Gardner, Carton expressly notified the court of its plan to initially defend against the Motion to Disqualify as a matter of law. See transcript of February 4, 1992 status hearing (pp. 2-3), PDHI's Memorandum in Opposition filed on February 13, 1992 (p. 3), transcript of February 18, 1992 status hearing (pp. 3-4), PDHI's Surreply Memorandum filed on March 18, 1992 (pp. 1-2). Rule 11 does not require courts to warn attorneys that their conduct may be sanctionable prior to imposing sanctions. However, once an attorney expressly informs the court of a proposed course of conduct which does not violate a rule of procedure, local rule, court order, or case law, and the district court does not indicate any disapproval, then it is objectively reasonable for the attorney to proceed in the manner made known to the court.
 
 
 49
 The district court's minute entry granting sanctions stated that it was reasonable to require Gardner, Carton to pay the Management Shareholders' fees and costs "as a condition of the plaintiff's ability to escape from the consequences of a losing tactical choice." However, the focus of Rule 11 is on conduct--not result. Mars Steel Corporation v. Continental Bank N.A., 880 F.2d 928, 933 (7th Cir.1989). Gardner, Carton should not be sanctioned because it did not prevail on its legal challenge to the Motion to Disqualify. Gardner, Carton initially responded to the Motion as a matter of law to avoid further discovery and expense. If Gardner, Carton had prevailed on its initial challenge to the Motion, numerous affidavits and depositions would not have been needed and the cost of litigation would have been reduced. Gardner, Carton should not be penalized for a course of conduct that, if successful, could have led to substantial savings of time and expense.
 
 
 50
 Finally, although deterrence is a "central goal" of Rule 11, sanctions were not necessary to deter similar attorney conduct in the future. Milwaukee Concrete Studios v. Fjeld Mfg. Co., 8 F.3d 441, 451 (7th Cir.1993). If a district court does not approve of a procedure made known to the court in advance, then it should say so at the time.
 
 B. 28 U.S.C. Sec. 1927
 
 51
 Under section 1927 an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees incurred because of such conduct." 28 U.S.C. Sec. 1927. We review an award of fees under section 1927 under an abuse of discretion standard. Walter v. Fiorenzo, 840 F.2d 427, 433 (7th Cir.1988).
 
 
 52
 [A court may impose sanctions under section 1927 against an attorney where that attorney has] acted in an objectively unreasonable manner by engaging in a "serious and studied disregard for the orderly process of justice" ... or where a "claim [is] without a plausible legal or factual basis and lacking in justification." Id. (citations and emphasis omitted).
 
 
 53
 We find that section 1927 sanctions were unwarranted.
 
 
 54
 Gardner, Carton's conduct clearly did not rise to the level of a "serious and studied disregard for the orderly process of justice." Gardner, Carton did not disregard a rule of procedure, local rule, or court order. Gardner, Carton followed a procedure that could have saved time and expense in dealing with the Motion to Disqualify.
 
 
 55
 Section 1927 sanctions should only be awarded when an attorney "unreasonably and vexatiously" multiplies the proceedings. 28 U.S.C. Sec. 1927; Ross v. City of Waukegan, 5 F.3d 1084, 1089 n. 6 (7th Cir.1993); Kotsilieris v. Chalmers, 966 F.2d 1181, 1184 (7th Cir.1992). We have already concluded in our Rule 11 analysis that Gardner, Carton's course of conduct was not unreasonable. "Vexatious" conduct involves either subjective or objective bad faith. Kotsilieris, 966 F.2d at 1184. The district court did not find that Gardner, Carton acted with subjective bad faith, and we do not believe their conduct evidences a subjective bad faith attempt to delay proceedings. In addition, "we have held that the bad faith standard has an objective component, and extremely negligent conduct, like reckless and indifferent conduct, satisfies this standard." Id. at 1185. Although Gardner, Carton's procedure ultimately caused some delay, its actions do not rise to the level of reckless or extremely negligent conduct. Given the district court's implicit approval of Gardner, Carton's procedure, it is even questionable whether Gardner, Carton's conduct constitutes ordinary negligence.
 
 
 56
 Finally, 28 U.S.C. Sec. 1927 provides that an attorney who unreasonably and vexatiously multiplies the proceedings may be required to personally pay the excess costs, expenses, and attorneys' fees incurred because of such conduct. (Emphasis added). The legislative history of the 1980 amendment to section 1927 states that when an attorney violates Sec. 1927 and causes the other parties to incur "expenses and fees that otherwise would not have [been] incurred...," then he/she should personally satisfy the excess costs attributable to such conduct. (Emphasis added). The district court required Gardner, Carton to pay all of the costs and fees that the Management Shareholders incurred in connection with their Motion to Disqualify after the district court's July 10, 1992 opinion. We will not speculate as to what portion of the sanctions amount would have been spent even if Gardner, Carton had initially responded to the Motion to Disqualify with factual evidence, but it is highly unlikely that much of the sanctions awarded represent "excess" costs.
 
 III. CONCLUSION
 
 57
 For the above reasons, we reverse the district court's order awarding sanctions under Federal Rule of Civil Procedure 11 and 28 U.S.C. Sec. 1927.
 
 
 58
 REVERSED.
 
 
 
 *
 This appeal was originally decided by an unpublished order on March 4, 1994. See Circuit Rule 53. The Court has subsequently decided to issue the decision as an opinion
 
 
 **
 The Honorable Michael M. Mihm, Chief District Judge from the Central District of Illinois, is sitting by designation
 
 
 [1]
 Although not relevant to our decision, at the time of the district court's decision, Rule 11 sanctions were not appropriately awarded against the law firm of Gardner, Carton. Pavelic & LeFlore v. Marvel Entertainment Group, 493 U.S. 120, 122-28, 110 S.Ct. 456, 458-60, 107 L.Ed.2d 438 (1989). However, under amended Rule 11(c) which became effective December 1, 1993, a court may impose sanctions upon a law firm