In the MATTER OF: Steven Edward HAGGERTY, Debtor

CASE NO. 14–11610

United States Bankruptcy Court, N.D. Indiana, Fort Wayne Division.

Signed November 30, 2015

Steven Edward Haggerty, Marion, IN, John Thomas Sees, Indiana, IN, for Debtor.

## DECISION AND ORDER REGARDING SANCTIONS

Robert E. Grant, Chief Judge, United States Bankruptcy Court

Elihu Root[1] is reputed to have said: "About half of the practice of a decent lawyer is telling would-be clients that they are damned fools and should stop." *See, McCandless v. Great Atlantic and Pacific Tea Co., Inc.,* 697 F.2d 198, 201–02 (7th Cir.1983). This matter is before the court because debtor's counsel, Mr. Sees, did not follow that advice and the trustee now seeks to have him sanctioned. The trustee contends the debtor's objection to a motion to compromise "unreasonably and vexatiously" multiplied these proceedings and so the estate should recover the additional costs, expenses and attorney fees it reasonably incurred because of that opposition. *See,* 28 U.S.C. § 1927; 11 U.S.C. § 105(a); *Matter of Volpert,* 110 F.3d 494, 500 (7th Cir.1997).

Prior to filing his petition for relief under chapter 7, the debtor was involved in litigation in Ohio as a result of having been excluded from his mother's will. He claimed he was entitled to a pro rata share of her estate. Although the claim to a portion of the probate estate was not scheduled as an asset, the trustee subsequently discovered it and proceeded to investigate. She determined that the probate estate was worth approximately $33,000, and if completely successful in the litigation the debtor's pro rata share would be approximately $8,000. Rather than pursue the litigation, she chose to compromise with the probate estate and accept the sum of $2,300 in full satisfaction of the debtor's (now the bankruptcy estate's) claims. A motion to approve the compromise was filed and noticed out. The only objection to it came from the debtor, who essentially argued that the trustee was settling too cheaply.

■ Chapter 7 debtors normally do not have standing to participate in the administration of the bankruptcy estate because they have no pecuniary interest in it. *In re Woodmar Realty Co.,* 241 F.2d 768, 770–771 (7th Cir.1957); *In re Cult Awareness Network, Inc.,* 151 F.3d 605 (7th Cir. 1998); *Willemain v. Kivitz,* 764 F.2d 1019 (4th Cir.1985); *In re Drost,* 228 B.R. 208 (Bankr.N.D.Ind.1998). That general rule changes, however, if the estate will have a surplus, so that all creditors will be paid in full and money will be returned to the debtor. The prospect of receiving a distribution gives the debtor a pecuniary inter-

---

1. Elihu Root (1845—1937)—New York attorney; Secretary of War, 1899—1904, under President McKinley; Secretary of State, 1905—1909, under President Theodore Roosevelt; United States Senator from New York, 1909—1915; recipient of the Nobel Peace Prize for 1912. *See,* Biographical Directory of U.S. Congress, http://bioguide.congress.gov/scripts/biodisplay.pl?index=R 000430, (last visited Nov. 25, 2015).

est in the estate and, therefore, standing to participate in proceedings involving its liquidation and distribution. *Cult Awareness Network*, 151 F.3d at 608; *Woodmar Realty*, 241 F.2d at 770–71; *Kapp v. Naturelle, Inc.*, 611 F.2d 703, 707 (8th Cir.1979); *In re Woods*, 139 B.R. 876, 877–878 (Bankr.E.D.Tenn.1992); *In re Olsen*, 123 B.R. 312, 313 (Bankr.N.D.Ill.1991); *In re Coleman*, 131 B.R. 59, 60–61 (Bankr. N.D.Tex.1991); *In re Stanley*, 114 B.R. 777, 778 (Bankr.M.D.Fla.1990). Debtor claimed the probate estate was worth approximately $500,000 and that, if successfully litigated, his pro rata share would be in excess of $100,000; more than enough to fully pay all creditors and return money to him. Given that contention, the court established a litigation schedule and the matter proceeded to trial.

■ The debtor had the burden of proving his standing to object. *In re Arroyo*, 489 B.R. 486, 488 (1st Cir. BAP 2013); *In re Morreale* 2015 WL 3897796 *7 (Bankr. D.Colo.2015). *See also, Cult Awareness Network*, 151 F.3d at 608; *In re Silverman*, 37 B.R. 200, 201 (S.D.N.Y.1982); *In re Brutsche*, 500 B.R. 62, 72 (Bankr. D.N.M.2013); *In re Stanley*, 114 B.R. 777, 778 (Bankr.M.D.Fla.1990). Yet, at trial, he failed to present any useful evidence supporting his claims about the value of the probate estate. The only witness to testify in support of the objection was the debtor himself and "all of [his] information [was] either non-existent or so outdated as to be useless." Transcript of Ruling, p.7, lines 18–20. The "entire case for standing [was] based upon information that [was] old, outdated and not worth relying on.... There [was] no evidence worthy of the word to justify [the] assertion that [the true value of the probate estate was 500 plus thousand dollars.]" Transcript, p.8, lines 15–23. The objection was overruled and the trustee's motion to compromise

was granted. Nonetheless, because of the objection, and the resulting need to proceed through discovery and trial, the bankruptcy estate incurred costs, expenses and attorney fees it otherwise would not, prompting the trustee to seek sanctions pursuant to 28 U.S.C. § 1927, and the court's inherent powers under § 105. *See, Volpert*, 110 F.3d at 500. The issue has been submitted to the court based upon the facts set forth in the motion and response and the briefs of counsel.

■ Section 1927 provides:

Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct. 28 U.S.C. § 1927.

Its purpose "is to deter frivolous litigation and abusive practices by attorneys and to ensure that those who create unnecessary costs also bear them." *Riddle & Assocs. v. Kelly*, 414 F.3d 832, 835 (7th Cir.2005) *quoting Kapco Mfg. Co. v. C & O Enters., Inc.*, 886 F.2d 1485, 1491 (7th Cir.1989). Bankruptcy courts also have the power to sanction conduct that unreasonably and vexatiously multiplies proceedings through § 105(a). *Volpert*, 110 F.3d at 500. *See also, Knepper v. Skekloff*, 154 B.R. 75 (N.D.Ind.1993). Whether or not sanctions are imposed is a matter committed to the court's discretion. *Corley v. Rosewood Care Center, Inc. of Peoria*, 388 F.3d 990, 1014 (7th Cir.2004).

■ To be sanctionable under § 1927 an attorney's conduct must be both unreasonable and vexatious. This requires some sort bad faith, whether objective or subjective. *Pacific Dunlop Holdings, Inc. v. Barosh*, 22 F.3d 113, 120 (7th Cir.1994)

*citing, Kotsilieris v. Chalmers,* 966 F.2d 1181, 1184 (7th Cir.1992); *In re TCI Ltd.,* 769 F.2d 441, 445 (7th Cir.1985). Subjective bad faith is the equivalent of malice: intentionally pursuing a matter because of the costs it will impose on the other side. *See, TCI Ltd.,* 769 F.2d at 445. Objective bad faith, on the other hand, exists when "a lawyer pursues a path that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound ..." *Id. See also, Kapco Mfg. Co.,* 886 F.2d at 1491 *quoting TCI Ltd.,* 769 F.2d at 445. Extremely negligent, reckless or indifferent conduct satisfies this aspect of bad faith. *Pacific Dunlop Holdings, Inc. v. Barosh,* 22 F.3d 113, 120 (7th Cir.1994); *Kotsilieris,* 966 F.2d at 1185. Moreover, the duty is an ongoing one and sanctions may be imposed when an attorney "continues to prosecute a claim after its lack of merit becomes apparent." *Shackelford v. Courtesy Ford, Inc.,* 96 F.Supp.2d 1140, 1145 (D.Colo.2000). *See also, Jolly Group, Ltd. v. Medline Industries,* 435 F.3d 717, 720 (7th Cir.2006) (§ 1927 imposes "a continuing duty upon attorneys to dismiss claims that are no longer viable.") *quoting Dahnke v. Teamsters Local 695,* 906 F.2d 1192, 1201 n. 6 (7th Cir.1990); *TCI Ltd.,* 769 F.2d at 445 ("dogged pursuit of a colorable claim becomes actionable bad faith once the attorney learns (or should have learned) that the claim is bound to fail.").

The question therefore becomes whether debtor's counsel continued to prosecute the objection to the trustee's motion to compromise after he knew or should have known that it was bound to fail. In particular, did counsel pursue the objection after it became apparent that the debtor had no standing to object?

The dispute over the value of the probate estate—and therefore the issue of standing—became apparent at the initial hearing on the trustee's motion. That was when all concerned first (officially) learned that the compromise was based upon the trustee's information that the estate was worth twenty-some odd thousand dollars, not the half million the debtor believed. Since that factual dispute could only be resolved after a trial, a litigation schedule, which included the opportunity for discovery, was put in place. During the course of discovery, both formal and informal, the basis for the trustee's position, which included a review of records from the probate proceeding, was explored. So too, the basis for the debtor's position. Yet, unlike the trustee's position which was based upon current information, the debtor was unable to produce any evidence as to the relevant, *current* value of the estate. This lack of information prompted the trustee's counsel to ask Mr. Sees to withdraw the objection after he had completed the debtor's deposition.[2]

Debtor's mother died in November 2011, three years before the debtor's bankruptcy and the his objection to the trustee's motion to compromise. The only evidence

---

2. This was not the first time Mr. Sees was given the suggestion to withdraw the objection. On January 6, 2015, following the initial hearing on the compromise, the probate estate's bankruptcy counsel, Mr. Kos, sent Mr. Sees an email providing him with additional information concerning the dispute. That email also questioned whether Mr. Sees had properly investigated the matter before filing the objection, as well as the debtor's standing to object because of the lack of any pecuniary interest, and requested the objection be withdrawn. Instead of regarding these suggestions as potentially sound advice that might be worthy of some consideration, Mr. Sees believed them "to be self-serving and more a part of the subject attorneys' litigation techniques in seeking an advantage for their respective clients." Objection to Motion for Sanctions, filed June 17, 2015, p.2; Brief Opposing Sanctions, filed Sept. 2, 2015, p.8.

the debtor had to support his position regarding the value of the probate estate was a handwritten list, apparently created from memory, regarding his mother's assets and statements for various accounts, all as things existed in 2007–2008—at least three years *before* his mother's death. Of course, the relevant time for determining whether the value of the probate estate was sufficient to give the debtor standing to object to the compromise was as of time the issue was being considered, not as things might have stood some six years earlier. A lot can happen in six years. Even if everything the debtor believed was true, in the face of the trustee's evidence concerning the current value of the probate estate, his outdated information concerning the way things might have been years ago would not be sufficient to give him standing to object today. We can appreciate that, based on the information he received from his client, debtor's counsel was "suspicious" that assets were dissipated so quickly, Objection to Motion for Sanctions, filed June 17, 2015, p.2, and those suspicions may well have justified the original objection and the opportunity for further investigation or discovery. Yet, counsel did nothing to investigate his suspicions or, if he did, he found nothing to support them. His investigation was limited to taking the trustee's deposition, reviewing information the trustee and the probate estate voluntarily disclosed, and speaking with the debtor's attorney in the state court litigation who "urged [him] to represent Debtor in this matter and to find a way to help Debtor preserve such claims and defenses as he may have had regarding the estate of his mother." Brief Opposing Sanctions, p.2. None of this produced any evidence that the current value of the probate estate was different from the information the trustee considered in connection with her decision to settle. In other words, the investigation produced no evidence that the debtor had standing to object to the compromise.

By the time the depositions of the debtor and the trustee had been completed—February 20, 2015—Mr. Sees knew or should have known that he had no evidence supporting the debtor's standing to object and the objection was bound to fail. A reasonably careful attorney would have realized that lack of merit and would have sought to withdraw the objection. By continuing to litigate after that point, counsel's actions were at least extremely negligent, if not reckless and indifferent, and therefore unreasonable and vexatious. *See, Jones v. Metropolitan School Dist. of Decatur Township*, 2013 WL 5348540 *12–13 (S.D.Ind.2013); *Shackelford*, 96 F.Supp.2d at 1146; *Rodriguez v. Banco Central*, 155 F.R.D. 403, 408 (D.Puerto Rico 1994).

The court understands that debtor's counsel did not pursue the matter because of any financial incentive on his part—he was not charging the debtor—but because he was "trying to see his client was fully represented in a matter he [felt] very strongly about." Objection to Motion for Sanctions, filed June 17, 2015, p.1–2. Nonetheless, "when lawyers yield to the temptation to file baseless pleadings to appease clients ... they must understand that their adversary's fees become a cost of *their* business." *TCI*, 769 F.2d at 446 (emphasis original). *See also, Davis v. Allis–Chalmers Corp.*, 567 F.Supp. 1532, 1542 (W.D.Mo.1983) ("Counsel cannot escape liability ... by relying solely on their belief that their clients genuinely feel that they were not treated fairly. The judicial system cannot guarantee everybody who wants it their day in court to litigate frivolous claims ...").

The bankruptcy estate is entitled to recover the reasonable costs, expenses and

attorney fees it incurred after February 20, 2015 as a result of the debtor's objection to the motion to compromise. The trustee shall have fourteen (14) days from this date within which to file and serve affidavits itemizing any such costs, expenses and fees. Debtor's counsel shall have fourteen (14) days thereafter to file any objections thereto. In the absence of objection, the court will determine the reasonable amount of the estate's costs, expenses and fees without further notice or hearing.

SO ORDERED.