Guy J. HENSLEY, Appellee,

v.

MacMILLAN BLOEDEL CONTAINERS, INC., Appellant.

No. 85–1213.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 18, 1985.

Decided March 12, 1986.

Rehearing and Rehearing En Banc Denied April 25, 1986.

Michael S. Moore, Little Rock, Ark., for appellant.

Silas H. Brewer, Jr., Little Rock, Ark., for appellee.

Before ROSS, Circuit Judge, BRIGHT, Senior Circuit Judge, and BOWMAN, Circuit Judge.

ROSS, Circuit Judge.

MacMillan Bloedel Containers, Inc., (MacMillan) appeals from a final judgment of the district court awarding Guy J. Hensley (Hensley) certain allegedly unpaid wages in his action under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 201–219 (1978) (FLSA). For the reasons set forth below, we reverse the judgment of the district court.

## I. FACTS

Hensley is an over-the-road truck driver employed by MacMillan since 1968. Prior to 1973 Hensley was paid for all hours worked at an hourly rate, including those hours spent on inspecting the vehicles and completing pre-trip and post-trip paperwork. In 1973, at the request of Hensley's union, the United Paperworkers International Union, AFL–CIO, Local 1422, an agreement was reached whereby MacMillan paid its over-the-road drivers at a mileage rate for trips in excess of 150 miles and at an hourly rate for trips less than 150 miles. Time spent on inspections and paperwork for trips less than 150 miles was compensated at an hourly rate. The 1973 agreement did not state whether or not the mileage rate method of compensation included payment for inspection and paperwork time.

During subsequent contract negotiations in 1976 and 1979, the Union submitted proposals to require MacMillan to pay drivers a separate hourly rate for time spent on inspections and paperwork, in addition to the mileage rate, for trips in excess of 150 miles. MacMillan rejected the proposal, contending each time, that the mileage rate already compensated the drivers for the time spent in those activities. Both the 1976 and 1979 contracts were ratified without any change in the method of calculating payments for inspection and paperwork activities.

During the time period relevant to this case Hensley's compensation was governed by a collective bargaining agreement dated October 16, 1979. The agreement provided that drivers would be paid a mileage rate for trips in excess of 150 miles but paid their hourly rate for trips of less than 150 miles. The agreement further provided that drivers would be compensated at their hourly rate for unloading delay time in excess of two hours per round trip. During each workweek relevant to this case Hensley received compensation calculated according to the agreement and the amount of his compensation exceeded the product of the total number of hours worked and the statutory minimum wage.

In 1983 Hensley filed an amended complaint alleging a violation of section 206(a) [1] of the FSLA and sought recovery of allegedly unpaid minimum wages for hours he spent performing inspections and paperwork on trips exceeding 150 miles. Hensley claimed that he was not compensated for those hours and that he should be compensated at an hourly rate for such nondriving time in addition to a mileage rate for driving time. MacMillan contended that its mileage rate was intended to compensate its drivers for these nondriving hours and that there was no violation of section 206(a) because Hensley received weekly compensation exceeding the prod-

1. Section 206(a) provides in relevant part:
   (a) Every employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enter-

prise engaged in commerce or in the production of goods for commerce, wages at the following rates:
   (1) * * * not less than $3.35 an hour after December 31, 1980 * * *.

uct of the total number of hours worked and the statutory minimum wage.

Following a brief trial the district court found that Hensley had not been compensated for the time spent on inspections and paperwork and that the case was controlled by *Barrentine v. Arkansas-Best Freight System, Inc.*, 750 F.2d 47 (8th Cir.1984), *cert. denied,* — U.S. —, 105 S.Ct. 2116, 85 L.Ed.2d 480 (1985) (*Barrentine II*). The district court entered judgment for Hensley and awarded him $3,216.00 for wages due and liquidated damages and $1,500 in attorneys fees. MacMillan now appeals.

## II. DISCUSSION

In general, to establish a violation of the minimum wage requirements of the FLSA, a plaintiff, such as Hensley, must demonstrate that he was engaged in compensable activity within the meaning of the statute and that the wages received for that activity, if any, were below the statutory minimum wage. 29 U.S.C. § 206(a); *see Barrentine II, supra.* Thus, for purposes of analyzing this case, we must consider: 1) whether the activity performed was compensable activity within the meaning of the statute; 2) whether Hensley was compensated for that activity; and 3) whether the rate of compensation was below the minimum wage.

█ In the present case the district court determined that although the activity in question was compensable activity, Hensley was not compensated in any amount for the time he spent doing inspections and paperwork for trips over 150 miles and thus found that the FLSA had been violated. Because the parties agree, and we have held in *Barrentine II, supra,* that all

time spent by drivers on pre-trip inspections is compensable activity under the FLSA, our focus shifts directly to the next two stages of the analysis. Thus the first issue to be addressed herein is whether the district court's finding that Hensley was not compensated in the mileage rate for the time he spent on inspections and paperwork for trips more than 150 miles is clearly erroneous.[2]

█ The finding that Hensley was not compensated when engaged in those activities is one of fact and we may reverse this finding only if we conclude that it is clearly erroneous. *Pullman-Standard v. Swint,* 456 U.S. 273, 285–90, 102 S.Ct. 1781, 1788–91, 72 L.Ed.2d 66 (1982). "[A] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City,* — U.S. —, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985) *quoting United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1948). Despite this stringent standard, after carefully examining the record as a whole, we are left with the definite and firm conviction that Hensley was in fact compensated in the mileage rate for the activities in question.

There exists evidence in the record that MacMillan had an established policy of compensating drivers for time spent on inspections and paperwork. It is uncontested that prior to 1973, MacMillan paid all drivers at an hourly rate for *all* hours worked including the time spent on inspections and paperwork. It is also undisputed that the practice continues today when drivers take trips of short lengths. All drivers who drive trips of less than 150

---

**2.** We reject Hensley's characterization of the issue before the court as being whether the district court's finding that there was no agreement to compensate Hensley for the time in question is clearly erroneous. In the first place we seriously question whether the district court made an express finding on that point upon which it based its conclusion. However, even assuming *arguendo* that it did, we do not think that finding alone is dispositive of whether a

violation of the FLSA has been established in this case. Liability under the statute depends not upon formal or agreed arrangements between employer and employee but upon the number of hours the employee works for the employer's benefit. *Mumbower v. Callicott,* 526 F.2d 1183, 1187–88 (8th Cir.1975); but *cf. Donovan v. Williams Chemical Co.,* 682 F.2d 185, 188 (8th Cir.1982) (court looked to employment agreement to see what parties intended).

miles are paid at an hourly rate for *all* hours worked including the time spent on inspections and paperwork. Further the record is clear that in 1973, due to a change in the collective bargaining agreement sought by Hensley's union, the method of calculating compensation for drivers who drove trips more than 150 miles changed from an hourly basis to a mileage basis.

It is Hensley's contention that when the parties agreed in 1973 to a mileage rate system of compensation when he drove trips of more than 150 miles, MacMillan ceased paying him for the time he spent on inspections and paperwork incident to those trips. It is MacMillan's position that the mileage rate was set at a level that was intended to compensate Hensley for the time spent on inspections and paperwork. The only circumstantial evidence tending to support Hensley's position is the absence of any express language in the relevant bargaining agreements stating that the mileage rate includes the activities in question and the fact that during contract negotiations after 1973 the union submitted proposals to require MacMillan to pay compensation for that time separately in addition to the mileage rate.

While this evidence supports the inference that MacMillan stopped compensating Hensley separately by-the-hour for each hour spent on inspections and paperwork because that is what his union requested, it does not negate the direct evidence that MacMillan had a custom and practice of treating those activities as compensable work and paying the drivers for the time. We simply cannot agree that MacMillan's acquiescence to Hensley's union's request in 1973 to change the method of calculation for compensating drivers of trips longer than 150 miles constitutes an abandonment of the company practice of compensating drivers for inspection and paperwork time. The method used to calculate Hensley's compensation for those activities changed in 1973 but not the practice of paying him for those activities.

This conclusion is evident to us because of MacMillan's past practice of paying all

drivers for all work and its present practice of paying for those same activities when performed in conjunction with a trip of less than 150 miles. It simply does not follow that a company who previously paid for time spent on inspections and paperwork for all drivers and who presently continues to pay for time spent on inspections and paperwork for local trips would single out one category of trips, namely those over 150 miles, and refuse to pay the drivers for inspections and paperwork incident to those longer trips. The fact that the union has unsuccessfully sought to get separate compensation for those activities in addition to the mileage rate does not, without more, convince this court that Hensley was not compensated for those activities by the mileage rate when there exists a clear practice within the company to compensate drivers for those nondriving activities. *See Shepler v. Crucible Fuel Co.*, 140 F.2d 371, 374 (3d Cir.1943) (employee's continuance in an employment under a new method of computing pay creates a new "contract" and the employee's consent to the new arrangement may be found from the continuance, notwithstanding repeated protests on his part.) It should also be noted that the fact that the union has been unsuccessful on this point supports an inference to the contrary, namely, that the company is already compensating the drivers for those activities.

This case presents a factual question not addressed in *Barrentine II, supra.* In *Barrentine II,* the company did not consider the pre-trip inspection and transportation activity in cases where defects were found, to be compensable time within the meaning of the statute nor did the company pay any compensation for the activity. 750 F.2d at 50. In this case the parties agree that Hensley was engaged in compensable activity but dispute whether his wages in fact included compensation for those activities. Because we hold the district court's finding on this fact to be erroneous, the case is not actually controlled by *Barrentine II,* nor is it in conflict with its holding. In *Barrentine II* this court merely held that the activities in question were

indeed compensable under the FLSA, 750 F.2d at 50–51, and we do not read *Barrentine II* as holding that every time a truck driver is not paid by-the-hour for time spent on inspections it constitutes a violation of the FLSA. Today we hold only that it was clearly erroneous to find that Hensley was not compensated by the mileage rate for the time he spent on inspections and paperwork for trips more than 150 miles.

Turning to the last part of our analysis, we must consider whether the wages Hensley actually received for the hours he worked, including time spent on inspections and paperwork, were below the minimum wage as established in section 206(a) of the FLSA. MacMillan contends there was no violation because Hensley's wages for all workweeks in question greatly exceeded the minimum wage. We agree.

A violation of section 206(a) occurs when an employee is paid at a rate that is below the minimum rate. The statute requires the payment of a minimum wage to "employees who in any workweek [are] engaged in commerce," 29 U.S.C. § 206(a) and sets the minimum wage in terms of an hourly rate. However no violation occurs "so long as the total weekly wage paid by an employer meets the minimum weekly requirements of the statute, such minimum weekly requirement being equal to the number of hours actually worked that week multiplied by the minimum hourly statutory requirement." *United States v. Klinghoffer Bros. Realty Corp.*, 285 F.2d 487, 490 (2d Cir.1960); *see also Dove v. Coupe*, 759 F.2d 167, 172 (D.C.Cir.1985); *Blankenship v. Thurston Motor Lines, Inc.*, 415 F.2d 1193, 1197–98 (4th Cir.1969); *Marshall v. Sam Dell's Dodge Corp.*, 451 F.Supp. 294, 301–03 (N.D.N.Y.1978); *Travis v. Ray*, 41 F.Supp. 6, 9 (W.D.Ky.1941).

Applying this standard to the wages Hensley was paid for the hours he worked, including the time spent on inspections and paperwork, results in the conclusion that no violation of section 206(a) has been established. Defendant's exhibit #20, a summary of the weekly wages Hensley

received in 1982 which was stipulated to by the parties, indicates that Hensley was paid at the equivalent of an hourly rate averaging from approximately $8.43 an hour to $19.40 an hour. We also note that the record reveals that Hensley himself admitted that his weekly wage was above the minimum wage. We are satisfied that under the circumstances of this case, section 206(a) of the FLSA has not been violated. On trips longer than 150 miles Hensley's compensation was calculated in accordance with a mileage rate, which when translated into an hourly rate for all hours worked, was well beyond the statutory minimum.

### III. CONCLUSION

Because we find that Hensley was compensated by the mileage rate for the time he spent on inspections and paperwork for trips more than 150 miles and that his total weekly wage was at all times above the statutory minimum wage, we hold that no violation of the FLSA has occurred. Accordingly, the judgment of the district court, including the award of attorneys fees, is reversed and the district court is directed to enter judgment for MacMillan. Each party is to pay its own costs of appeal.