**Tyla LaRay BIRCH, Plaintiff,**

v.

**June KIM a.k.a. "Mister J" d/b/a J–Town, Defendant.**

**June KIM, Counterclaimant,**

v.

**Tyla LaRay BIRCH, Counterdefendant.**

No. IP 96–1549–C–B/S.

United States District Court, S.D. Indiana, Indianapolis Division.

Sept. 9, 1997.

Craig Earl Capehart, Indianapolis, IN, for Tyla LaRay Birch.

Thomas Dakich, Baldwin Dakich & Earnest, Indianapolis, IN, for June Kim.

## ENTRY DENYING PLAINTIFF'S MOTION TO STRIKE REPLY BRIEF, DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND GRANTING PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIM

BARKER, Chief Judge.

This matter comes before the Court on Plaintiff's motion to strike Defendant's sum-

mary judgment reply brief, Defendant's motion for summary judgment and Plaintiff's motion to dismiss Defendant's counterclaim. For the reasons discussed below, the Court hereby *denies* Plaintiff's motion to strike Defendant's reply brief, *denies* Defendant's motion for summary judgment, and *grants* Plaintiff's motion to dismiss Defendant's counterclaim.

## I. STATEMENT OF FACTS

Plaintiff Tyla LaRay Birch began employment on September 5, 1996 as a salesperson in the jewelry department of J–Town, owned by Defendant June Kim, a.k.a. "Mister J." Plaintiff was paid weekly on Saturdays, and her pay consisted of a $3.00 hourly wage in addition to commissions or bonuses for sales made. Plaintiff last worked for Defendant on October 9, 1996 and was formally terminated from her position on October 21, 1996 (Plaintiff Exh. A at 1). Plaintiff made several demands for her paycheck for the final week worked. Defendant mailed Plaintiff's final paycheck on October 26, 1996, which Plaintiff had not received before she instituted this lawsuit on October 29, 1996. Plaintiff later received Defendant's check for her final week of work, presented it for payment, and the check cleared on November 5, 1996.

Plaintiff filed suit on October 29, 1996, alleging that (1) Defendant had failed to pay her the minimum wage for all hours worked, (2) Defendant had failed to furnish Plaintiff with wage statements listing hours worked, wages paid and deductions made each pay period and (3) Defendant had failed to pay Plaintiff wages for her final pay period and for hours worked but not recorded during each pay period.

## II. ANALYSIS

### A. PLAINTIFF'S MOTION TO STRIKE DEFENDANT'S REPLY BRIEF

■ Plaintiff moves to strike Defendant's summary judgment reply brief on the ground that Defendant's reply brief was untimely. Plaintiff argues that Defendant filed his summary judgment motion on December 16, 1996

and Plaintiff filed her response brief on February 18, 1997. In order to be timely, Defendant's reply should have been filed on or before March 4, 1997.[1] However, Defendant did not file his reply brief until March 10, 1997. As Plaintiff notes, Defendant mistakenly asserted that he was an adverse party to his own summary judgment motion and thus entitled to fifteen days to respond, rather than the ten days allowed for a reply brief. *See* Local Rule 7.1(a). Although Plaintiff correctly identifies that Defendant's reply brief was filed after the deadline for reply submissions, the Court has discretion to accept such late filings and the delay in this instance was not substantial. *See* Local Rule 7.1(a).

Plaintiff's motion to strike was filed on July 11, 1997. Under Local Rule 7.1(a), an adverse party to a motion to strike has fifteen days after service to respond to such motion. Defendant's response brief should have been filed by July 28, 1997. As no such response was ever filed, the Court will now enter a summary ruling on the motion to strike pursuant to Local Rule 7.1(a).

Local Rule 7.1(a) sets forth briefing schedules for motion practice. The standard briefing schedule in the Southern District of Indiana allows the Court to receive three briefs: initial motion, the adverse party's response and the moving party's reply. This three-brief process allows the Court to entertain a full hearing on the motion. At the same time, as the Seventh Circuit noted in *Spears v. City of Indianapolis*, "We live in a world of deadlines.... A good judge sets deadlines, and the judge has a right to assume that deadlines will be honored. The flow of cases through a busy district court is aided, not hindered, by adherence to deadlines." 74 F.3d 153, 156 (7th Cir.1996). Therefore, the Court's interest in allowing the parties a full hearing is tempered by awareness of its crowded docket and the necessity of deadlines in streamlining the judicial process.

With regard to the filing of the reply brief, Defendant clearly operated under the mistaken belief that he was an adverse party

---

1. Plaintiff incorrectly argues that Defendant's reply brief should have been filed on or before February 28, 1997. However, see Fed. R.Civ. P. 6(a) (providing for computing time for filing).

within the meaning of Local Rule 7.1(a) and thus entitled to fifteen days to file his response. Defendant's error in missing the deadline invites the Court's leniency. Also, Defendant's filing was only five days late and fell within the deadline Defendant mistakenly thought applicable. Defendant's attempt at compliance with the filing deadline and the relatively brief delay in filing argues against excluding Defendant's untimely filing. In addition, while Plaintiff is not required to prove prejudice and, in fact, did not argue prejudice in her motion to strike, it is clear that Plaintiff is not substantially prejudiced by the Court's acceptance of Defendant's reply brief, as evidenced in part by the fact that Plaintiff herself, waited four months before bringing this matter to the Court's attention. After considering all of the above recited facts, the Court hereby *denies* Plaintiff's motion to strike Defendant's reply brief.

### B. DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

#### *Summary Judgment Standard*

Rule 56(c) of the Federal Rules of Civil Procedure provides that a motion for summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine issue of material fact exists if there is sufficient evidence for a jury to return a verdict in favor of the nonmoving party on the particular issue. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Methodist Med. Center v. American Med. Sec., Inc.,* 38 F.3d 316, 319 (7th Cir.1994). In considering a summary judgment motion, a court must draw all justifiable inferences in a light most favorable to the opposing party, and must resolve any doubt against the moving party. *See Anderson,* 477 U.S. at 255, 106 S.Ct at 2513; *Spraying Sys. Co. v. Delavan Inc.,* 975 F.2d 387, 392 (7th Cir.1992); *Bank Leumi Le–Israel. B.M. v. Lee,* 928 F.2d 232, 236 (7th Cir.1991).

While the burden rests squarely on the party moving for summary judgment to show "that there is an absence of evidence to support the nonmoving party's case," *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986), the nonmoving party may not simply rest on the pleadings, but must affirmatively demonstrate by specific factual allegations that a genuine issue of material fact exists for trial. *Celotex,* 477 U.S. at 322–23, 106 S.Ct. at 2552–53; *Billups v. Methodist Hosp. of Chicago,* 922 F.2d 1300, 1302 (7th Cir.1991). Conclusory allegations by a party opposing a motion for summary judgment cannot defeat the motion. *See Smith v. Shawnee Library System,* 60 F.3d 317, 320 (7th Cir.1995). "The moving party is 'entitled to a judgment as a matter of law' [if] the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552. If doubts remain, however, as to the existence of a material fact, then those doubts should be resolved in favor of the nonmoving party and summary judgment denied. *See Wolf v. City of Fitchburg,* 870 F.2d 1327, 1330 (7th Cir.1989).

### 1. FEDERAL CLAIM UNDER FAIR LABOR STANDARDS ACT

■ Defendant moves for summary judgment on Plaintiff's claim under the Fair Labor Standards Act, asserting that there is no genuine issue of material fact Plaintiff's complaint asserts a cause of action against Defendant for failing to pay her the minimum wage for hours worked, in violation of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 et seq. The relevant sections of the Fair Labor Standards Act provide:

§ 206. Minimum Wage.

(a) Employees engaged in commerce ...

Every employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, wages at the following rates:

(1) except as otherwise provided in this section, not less than $4.25 an hour during the period ending on September 30, 1996, not less than $4.75 an hour during the year beginning on October 1, 1996, and not less than $5.15 an hour beginning September 1, 1997.

29 U.S.C. § 206 (West 1997). Plaintiff alleges that Defendant failed to keep accurate records of the hours Plaintiff worked and that she was not compensated for additional hours worked that are not reflected in her wage statements. Plaintiff Aff. ¶¶ 11–12. In support of his motion for summary judgment, Defendant argues that he has compensated Plaintiff far in excess of the minimum wage required by § 206. Defendant Aff. ¶ e.[2] Defendant has presented the Court with copies of Plaintiff's wage statements for each week worked, recording Plaintiff's hours worked and total weekly compensation. Defendant Ex. A. The wage statements show that Plaintiff's compensation consisted of $3.00 an hour for each hour worked and commissions for sales. Defendant Exh. A. Defendant argues that Plaintiff's compensation for each week, including commissions, averaged an hourly rate far exceeding $4.25, the applicable minimum wage,[3] and that this level of

compensation meets the requirements of § 206, as interpreted by federal courts.

Defendant directs the Court to consider the Eighth Circuit's decision in *Hensley v. MacMillan Bloedel Containers, Inc.,* 786 F.2d 353 (8th Cir.1986) for the appropriate way to calculate the minimum wage requirement of § 206. The court in *Hensley* held:

A violation of § 206(a) occurs when an employee is paid at a rate that is below the minimum rate. The statute requires the payment of a minimum wage to "employees who in any workweek are engaged in commerce," 29 U.S.C. § 206(a) and sets the minimum wage in terms of an hourly rate. However no violation occurs "so long as the total weekly wage paid by an employer meets the minimum weekly requirements of the statute, such minimum weekly requirement being equal to the number of hours actually worked that week multiplied by the minimum hourly statutory requirement."

*Hensley,* 786 F.2d at 357 (quoting *U.S. v. Klinghoffer Bros. Realty Corp.,* 285 F.2d 487, 490 (2d Cir.1960)). *See also Dove v. Coupe,* 759 F.2d 167, 171 (D.C.Cir.1985); *Blankenship v. Thurston Motor Lines. Inc.,* 415 F.2d 1193, 1198 (4th Cir.1969). While there is no Seventh Circuit case on point, the

---

**2.** We note that Plaintiff argues in her response brief that Defendant's affidavits are defective because (1) they lack a notarial seal, (2) the notary public failed to state county of residence as required under Indiana state law, (3) the affidavits do not meet the form for unsworn statements and (4) the affidavits fail to show affiants' competence. We reject all of Plaintiff's arguments for the following reasons: (1) The originals of Defendant's affidavits filed with the Court do, in fact, contain notary seals. Plaintiff's photocopies of the affidavits simply do not show the seals; (2) Fed.R.Civ.P. 56(e) governs the form of affidavits on a summary judgment motion and makes no requirement for a notary public to state his county of residence. Plaintiff cites an Indiana statute, which is not applicable here. The Federal Rules of Civil Procedure govern procedural issues in federal courts. Fed.R.Civ.P. 1. *See Redfield v. Continental Casualty Corp.,* 818 F.2d 596, 605 (7th Cir.1987); (3) The affidavits meet the form required by Fed.R.Civ.P. 56(e) and thus compliance with the rules for unsworn statements is unnecessary; and (4) The affidavits set out each affiant's basis of personal knowledge and familiarity with the matters sworn therein, satisfying the requirement of Fed.R.Civ.P. 56(e) that an affidavit affirmatively show affiant's competence.

**3.** We note that Defendant argues that the applicable minimum wage for time Plaintiff worked before October 1, 1996 is $4.25 an hour and $4.75 an hour for all time worked on or after October 1, 1996. However, § 206(g)(1) limits the minimum wage in this case to $4.25 an hour for all time worked by Plaintiff. Section 206(g) provides:

(g) Newly hired employees who are less than 20 years old.
(1) In lieu of the rate prescribed by subsection (a)(1) of this section, any employer may pay any employee of such employer, during the first 90 consecutive calendar days after such employee is initially employed by such employer, a wage which is not less than $4.25 an hour.

29 U.S.C. § 206(g)(1) (West 1997). Plaintiff asserts in her complaint that she was 19 years old when she instituted this cause of action. Thus, § 206(g) applies to Plaintiff as an employee less than 20 years old. Plaintiff worked less than 90 consecutive days for Defendant, so the minimum wage applicable to all time worked by Plaintiff for Defendant is $4.25 an hour.

Northern District of Illinois in *Cuevas v. Monroe St. City Club, Inc.,* followed the reasoning in *Klinghoffer* and, *Hensley,* stating, "it has long been well-settled that no violation occurs" as long as the average hourly pay for a particular workweek meets the minimum wage requirements. *Cuevas,* 752 F.Supp. 1405, 1416 (N.D.Ill.1990).

In *Hensley,* 786 F.2d 353 (8th Cir.1986), plaintiff was a truck driver who was compensated on an hourly basis for trips under 150 miles and at a mileage rate for trips in excess of 150 miles. Plaintiff argued that his employer failed to compensate him on trips paid at the mileage rate for time spent on inspections and paperwork, bringing a claim under § 206 for failure to pay the minimum wage. *Hensley,* 786 F.2d at 354. The defendant employer argued that § 206 was not violated because Hensley's weekly compensation exceeded the minimum wage requirement, as calculated by multiplying hours worked by the statutory minimum wage. *Hensley,* 786 F.2d at 354–55. The court concluded that there was no violation of § 206 because Hensley's average hourly rate did, in fact, exceed the statutory minimum, as properly calculated by defendant employer. *Hensley,* 786 F.2d at 357. In *Klinghoffer,* 285 F.2d 487 (2d Cir.1960), plaintiffs raised a claim under § 206 based on defendant employer's failure to compensate plaintiffs for overtime hours worked. The court held that § 206 was not violated because the total wage paid divided by hours worked exceeded the minimum wage requirement. *Klinghoffer,* 285 F.2d at 490.

Similarly here, Defendant asserts that Plaintiff's wages, determined by a basic hourly rate of $3.00 per hour plus commissions, exceeded the minimum wage required by § 206. Defendant calculated Plaintiff's average hourly compensation per week, as represented in Plaintiff's wage statements (Defendant Exh. A), as ranging from $5.34 to $7.23 an hour. *See* Defendant Motion Br. at 2–3. Accordingly, Defendant argues that in no week did Plaintiff's total compensation ever fall below the statutory minimum of $4.25 an hour. *See* Defendant Motion Br. at 1.

Once the party moving for summary judgment has presented sufficient evidence in support of its motion, the nonmoving party must produce specific evidence that a genuine issue of material fact exists. Plaintiff counters Defendant's evidence with a sworn statement that she worked more hours than were represented in her wage statements, as prepared by Defendant. Plaintiff Aff. ¶ 11. Defendant claims he compensated Plaintiff for all hours worked, as exhibited by the wage statements, while Plaintiff asserts that she worked more hours than shown by the wage statements. This raises issues of credibility, and issues of credibility are for a trier of fact to resolve; they are not properly determined on a motion for summary judgment. If a jury believes Plaintiff's account of Defendant's allegedly faulty methods of record keeping and determines from the evidence the number of hours she, in fact, worked each week, it might reasonably find that Plaintiff worked more hours than compensated for in her paychecks. In addition, as Plaintiff is asserting an action for failure to pay the minimum wage, a reasonable jury could infer that she worked enough additional hours so that, when added to the hours represented in her wage statements and divided into the compensation received, the average hourly rate would fall below the statutory minimum.

Examining the evidence before the Court and construing it in a light most favorable to Plaintiff, we find that there are genuine issues of material fact regarding the number of hours actually worked by Plaintiff that must be resolved by a trier of fact. Accordingly, Defendant's motion for summary judgment as to Plaintiff's claim under § 206 of the Fair Labor Standards Act is hereby *denied.*

## *2. STATE LAW CLAIMS*

Defendant also moves for summary judgment as to Plaintiff's state law claims under the Indiana Minimum Wage Law of 1965, as amended, Ind.Code § 22–2–2–1, et seq., the Indiana wage claims statute, Ind.Code 22–2–9–1, et seq., the Indiana wage payment statute, Ind.Code 22–2–5–1, et seq., asserting that as to these there is no genuine issue of material fact. The Court will address each of Plaintiff's claims in turn.

### Failure to Furnish Wage Statements

■ Plaintiff claims Defendant failed to furnish a wage statement for each pay period of her employment, in violation of Ind.Code 22–2–2–8. The statute provides in relevant part, "Every employer subject to the provisions of this chapter . . . shall furnish to each employee a statement of the hours worked by the employee and the wages paid to him listing deductions made each pay period." Ind.Code 22–2–2–8. Defendant moves for summary judgment on this claim, asserting that he presented Plaintiff with copies of her wage statements in accordance with his standard business practice. Defendant Aff. ¶¶ g, j. Defendant also provides an affidavit from one of his employees, Hayley Lowe, who attests that she is familiar with Defendant's business practice of providing employees with copies of their wage statements and that she witnessed Defendant presenting Plaintiff with her wage statements. Hayley Lowe Aff. ¶¶ c-d.

Defendant produced copies of two of Plaintiff's wage statements, covering the pay periods of September 22 through September 28, 1996 and September 29 through October 5, 1996, which copies appear to contain Plaintiff's signature at the bottom, in acknowledgment of receipt. Defendant Exh. A at 5–6. Plaintiff acknowledges receipt of the wage statement produced by Defendant for her first week of employment, covering the pay period of September 2 through September 8, 1996. Plaintiff Aff. ¶ 7. Plaintiff claims, however, that the signature on the wage statement covering the pay period of September 29 through October 5, 1996 is not hers. Plaintiff Aff. ¶ 9. Plaintiff makes no response regarding the signature on the wage statement covering the pay period of September 22 through September 28, 1996.

There is no dispute between the parties as to the fact that Defendant furnished Plaintiff her wage statement for the pay period of September 2 through September 8, 1996. As to the other pay periods, however, the evidence reveals a *conflict* between the parties. Plaintiff contends she never received her wage statements, while Defendant contends that he furnished them to her. Once again, the dispute turns on matters of credibility, and questions of credibility are for a trier of fact to resolve; they are not properly determined on a motion for summary judgment. As there is a genuine issue of material fact as to whether Defendant furnished Plaintiff with copies of at least one of her wage statements, the Court hereby *denies* Defendant's motion for summary judgment as to Plaintiff's second cause of action.[4]

### Failure to Pay Wages for Final Period

■ Plaintiff asserts a separate claim against Defendant for failure to pay wages earned during her final week of employment, the period covering October 6 through October 9, 1996, citing Ind.Code 22–2–9–2(a) and 22–2–5–1. Plaintiff Aff. ¶ 5. Defendant moves for summary judgment on this claim, asserting that he did, in fact, pay Plaintiff for her final week of work, as evidenced by his canceled check, dated October 26, 1996. Defendant Aff. ¶ f; Defendant Exh. C. Defendant's employee report card for Plaintiff, which lists Plaintiff's hours worked, wages paid, deductions and net pay, indicates Defendant issued a check, dated October 26, 1996, for compensation in the amount of $144.23. Defendant Exh. A at 1. Plaintiff concedes that she received Defendant's check for $144.23 shortly after she instituted this lawsuit. Plaintiff Aff. ¶ 6. Defendant's canceled check contains Plaintiff's endorsement on the reverse side. Defendant Exh. C.

---

4. In both Defendant's answer to Plaintiff's complaint and his motion for summary judgment, Defendant denies Plaintiff's assertion that he failed to furnish her with wage statements. We note, however, that Ind.Code 22–2–2–8, the code section upon which Plaintiff bases her second cause of action, does not appear to provide redress to employees whose employer fails to furnish wage statements in accordance with the statute. We have found no case law allowing employees redress for violation of this statute, and Defendant has failed to provide us with relevant case law or argument on this issue. Although there may be some question as to whether a private cause of action exists for employees against an employer who violates Ind. Code 22–2–2–8, Defendant has not argued this in his summary judgment motion. Accordingly, we limit our ruling denying Defendant's motion for summary judgment on this claim to the reasons stated above.

Plaintiff does not dispute the fact that she cashed the check and endorsed the reverse side. Taken as a whole, the evidence presented to the Court conclusively shows that Defendant paid Plaintiff wages for the period of October 6 through October 9, 1996. As there is no genuine issue of material fact regarding Plaintiff's claim for unpaid wages for her final week of employment, the Court hereby *grants* Defendant's motion for summary judgment as to this claim.[5]

### Remaining State Law Claims

Plaintiff asserts other state law claims against Defendant under the Indiana Minimum Wage Law, Ind.Code 22–2–2–4, the Indiana wage claims statute, Ind.Code 22–2–9–2(a), and the Indiana wage payment statute, Ind.Code 22–2–5–1. Defendant moves for summary judgment as to all of these claims, asserting again that there are no genuine issues of material fact. However, rather than substantively argue each claim in turn, Defendant merely reiterates the assertions of fact and conclusions of law that he advanced regarding Plaintiff's federal law claim under the Fair Labor Standards Act. The Court has concluded, for the reasons stated above, that there is a genuine issue of material fact as to whether Plaintiff was compensated for all hours worked for Defendant. This factual dispute between the parties constitutes the essential basis of all of Plaintiff's remaining state law claims, as well as the Fair Labor Standards Act claim. As Defendant has asserted nothing additional with respect to Plaintiff's state law claims, Defendant's motion for summary judgment as to these claims is also *denied* for the reasons set forth above.

However, the Court notes that the viability of each of Plaintiff's remaining claims under Indiana law is questionable. The Court notes that the Indiana Minimum Wage Law, Ind.Code 22–2–2–4, states that an "employ-er" under Ind.Code 22–2–2–4 "shall not include any employer who is subject to the minimum wage provisions of the federal Fair Labor Standards Act of 1938, as amended (29 U.S.C. 201–209)." Ind.Code 22–2–2–3. Thus, the Indiana Minimum Wage Law cannot apply when the Fair Labor Standards Act applies.

The test for resolving when an employer is subject to the minimum wage provisions of the Fair Labor Standards Act turns on the activities of the employee, specifically, whether the employee is "engaged in commerce or in the production of goods for commerce, or *is employed in an enterprise engaged in commerce* or in the production of goods for commerce." 29 U.S.C. § 206(a) (emphasis added). Plaintiff alleges in her Complaint that "Mister J is an employer engaged in commerce." Plaintiff Complaint ¶.6. Defendant has admitted this allegation in his answer. Defendant Answer ¶ 1. Thus, it appears that there is no dispute between the parties that Plaintiff was, at all relevant times, employed by Defendant, an employer engaged in commerce within the meaning of § 206, bringing Defendant within the purview of the Fair Labor Standards Act. Accordingly, Plaintiff's claim under the Indiana Minimum Wage Law may not be viable. However, as the parties have not briefed this issue, the Court has declined to decide it at this time.

### Failure to Pay Earned Wages

Plaintiff also asserts a claim against Defendant under Ind.Code 22–2–9–2(a) and 22–2–5–1 for failure to pay the full amount of wages earned during her period of employment. Plaintiff repeats her allegations in support of this claim for relief, maintaining that Defendant failed to keep accurate records of the hours Plaintiff worked and that she worked more hours than Defendant accounted for in Plaintiff's weekly paychecks.

---

5. It appears to the Court that Plaintiff argues that she received no wages for the final week of her employment for the purpose of keeping alive her claim for insufficient wages paid for that week. However, as Plaintiff actually received at least some of her wages for the week, and all of the wages required under the statement of wages for that week (Defendant Exh. A), Plaintiff cannot sustain her contention that she received no wages for the week. The claim Plaintiff apparently intends to make, that Defendant failed to pay Plaintiff all of her wages for the hours actually worked by Plaintiff in her final week, is addressed in Plaintiff's claims for failure to pay minimum wage and failure to pay wages earned but unpaid.

Plaintiff Aff. ¶ 10. Specifically, Plaintiff alleges that Defendant failed to pay her for time worked before and after Defendant's regular business hours. Plaintiff Aff. ¶ 11. Plaintiff has brought her action under Ind. Code 22–2–9–2(a) and Ind.Code 22–2–5–1, but the Court notes that these statutes also may not provide a cause of action for Plaintiff in this case.

We first examine Ind.Code 22–2–9–2(a). The statute provides in relevant part, "Whenever any employer separates any employee from the pay-roll, the unpaid wages or compensation of such employee shall become due and payable at regular pay day for pay period in which separation occurred." Ind. Code 22–2–9–2(a). Plaintiff argues that Ind. Code 22–2–9–2(a) provides her a cause of action against Defendant for failure to pay her unpaid wages at the time she left Defendant's employment. However, Ind.Code 22–2–9–4 expressly assigns the Commissioner of Labor the duty to enforce the provisions of Chapter 9 and allows the Commissioner to refer wage claims to the Attorney General to initiate actions on behalf of any claimant. Ind.Code 22–2–9–4(a)–(b).

The plain language of the statute indicates that Ind.Code 22–2–9–2(a) does not provide a civil claimant such as Plaintiff a direct, private cause of action. We have been unable to find any case law explicitly asserting whether there is a private cause of action for plaintiffs under Ind.Code 22–2–9–2(a). However, the Indiana Supreme Court opined in *McKenna* that "there is nothing in [Ind.Code 22–2–9–2(a) ] or [Ind.Code 22–2–5–1] which makes action by the commissioner of labor the exclusive remedy under the Act." *McKenna v. Standard Oil Co.*, 236 Ind. 370, 140 N.E.2d 512, 514–15 (1957). The Court held that the plaintiff employee was precluded from joining other employees in a class action because there was no common interest among them that could be proven by the same evidence. *McKenna*, 140 N.E.2d at 516. However, the court found that plaintiff's individual cause of action could be maintained separately from the class action. On this ground, the court reversed the judgment of the lower court. *McKenna*, 140 N.E.2d at 516. The court did not specify whether one or both of the statutes provided plaintiff an individual cause of action, and the court did not address the statutes substantively.

There is other Indiana authority indicating that a private cause of action under Ind.Code 22–2–9–2(a) cannot be maintained directly by plaintiffs. The decision of the Indiana Court of Appeals in *Pyle v. Nat'l Wine & Spirits Corp.*, 637 N.E.2d 1298 (Ind.App.Ct.1994) provides insight into one trial court's handling of a claim under Ind.Code 22–2–9–2(a). The issues in *Pyle* were before the court of appeals following the trial court's grant of summary judgment for defendant. The trial court granted summary judgment on two grounds: "1) that plaintiffs had failed to meet the prerequisites for bringing a private civil action under I.C. 22–2–9–1 and 2) even if the prerequisites have been met, [plaintiffs] were not entitled to the bonus." *Pyle*, 637 N.E.2d at 1298. The appellate court affirmed the trial court's grant of summary judgment on the second ground asserted, not reviewing the first ground relating to private actions under Ind.Code 22–2–9–1. *Pyle*, 637 N.E.2d at 1301, n. 1.

Although it did not reach the issue, the court of appeals noted that the trial court held that plaintiffs had failed to comply with Ind.Code 22–2–94, which sets forth the duty of the Commissioner of Labor to enforce the statute and the channels through which a claimant must go to bring a claim against an employer.[6] The trial court held that, because plaintiffs had not followed the formal

---

6. The statute provides:

(a) It shall be the duty of the commissioner of labor to enforce and to insure compliance with the provisions of this chapter, to investigate any violations of any of the provisions of this chapter, and to institute or cause to be instituted actions for penalties and forfeitures provided under this chapter. The commissioner of labor may hold hearings to satisfy himself as to the justice of any claim, and he shall cooperate with any employee in the enforcement of any claim against his employer in any case whenever, in his opinion, the claim is just and valid. (b) The commissioner of labor may refer claims for wages under this chapter to the attorney general, and the attorney general may initiate civil actions on behalf of the claimant or may refer the claim to any attorney admitted to the practice of law in Indiana. Ind.Code 22–2–94.

enforcement and referral process established in the statute, plaintiffs had not complied with the statute and could not bring a private civil action under Ind.Code 22–2–9–1. The holding of the trial court strongly indicates that, if an employee actually has a private cause of action, it cannot be brought as such unless and until the employee's claim is first reviewed by the Commissioner of Labor and, in some instances, the Attorney General, as set forth in Ind.Code 22–2–9–4.

These two cases considered in the light of the language of the statute constitute the extent of the authority the Court has been able to locate on the issue of whether a private cause of action initiated by a civil plaintiff can be maintained under Ind.Code 22–2–9–2(a). We concede that the Indiana authority cited above does not provide a clear resolution of the issue. It is clear, however, that Plaintiff in the current action has not followed the procedural referral system set forth in Ind.Code 22–2–9–4. Because the parties have not briefed this issue regarding whether Plaintiff can assert a cause of action under Ind.Code 22–2–9–2(a), the Court will not finally decide it at this time.

It is also unclear whether Plaintiff can maintain a privately-asserted claim under Ind.Code 22–2–5–1. That statute provides in relevant part, "Every person, firm, corporation, limited liability company, or association, their trustees, lessees, or receivers appointed by any court, doing business in Indiana, shall pay each employee at least semimonthly or biweekly, if requested, the amount due the employee." Ind.Code 22–2–5–1. Plaintiff interprets this statute to grant her a cause of action for wages earned but unpaid for each week she worked for Defendant. However, the Indiana courts appear split on the issue of whether a cause of action can lie where the parties are disputing an *amount* owed and rather than the *timing* of payments. *See Atchley v. Heritage Cable Vision Assoc.*, 904 F.Supp. 870, 875 (N.D.Ind.1995) (applying Indiana law, holding that as plaintiffs' claim was based on underpayment, rather than wages not paid within the time designated in the statute, plaintiffs could not assert an action under Ind.Code 22–2–5–1); *Huff v. Biomet Inc.*, 654 N.E.2d 830, 835 (Ind.Ct.

App.1995) (finding where plaintiff merely disputed the amount owed and had not alleged any facts regarding time and frequency of the payments, plaintiff had not alleged any material facts that would support an action under Ind.Code 22–2–5–1); *Hendershot v. Carey*, 616 N.E.2d 412, 415 (Ind.Ct.App.1993) ("It is irrelevant that the amount of the checks was in dispute; the statute addresses the frequency with which an employer must pay its employees, not the amount it must pay"). *But see Stampco Constr. Co. v. Guffey*, 572 N.E.2d 510, 513–14 (Ind.Ct.App. 1991) (finding cause of action for dispute for underpayment under Ind.Code 22–2–5–1); *Osler Institute, Inc. v. Inglert*, 558 N.E.2d 901 (Ind.Ct.App.1990) (finding cause of action for dispute as to amount of wages under Ind.Code 22–2–5–1); *Fardy v. Physicians Health Rehabilitation Services, Inc.*, 529 N.E.2d 879 (Ind.Ct.App.1988) (finding cause of action for dispute as to amount of wages under Ind.Code 22–2–5–1).

Indiana courts have not resolved the issue of whether a plaintiff asserting a claim for underpayment of wages that remain unpaid after separation from employment has set forth a claim for which relief can be granted under Ind.Code 22–2–5–1, nor have they openly acknowledged this conflict. However, as the parties have not raised this issue or briefed it, the Court once again reserves a ruling.

In summary, there remain substantial questions as to whether Plaintiff can maintain each of her claims under the Indiana Minimum Wage Law, the Indiana wage claims statute and the Indiana wage payment statute. However, because the viability of Plaintiff's causes of action under these state laws has not been addressed by the parties, the Court declines to decide the issues at this time. For these reasons, Defendant's motion for summary judgment is *denied* as to Plaintiff's state law claims under Ind.Code 22–2–2–1, 22–2–9–2(a) and 22–2–5–1.

## C. *PLAINTIFF'S MOTION TO DISMISS DEFENDANT'S COUNTERCLAIM*

Plaintiff filed her complaint on October 29, 1996, and Defendant filed his answer to Plaintiff's complaint and a separate counter-

claim on November 20, 1996. On January 21, 1997, Plaintiff filed a motion to dismiss Defendant's counterclaim under Fed.R.Civ.P. 12(b)(6), asserting that Defendant's counterclaim fails to state a claim upon which relief can be granted. Plaintiff argues that Defendant's counterclaim is vague and conclusory, and that the opinions and conclusions asserted do not raise any cognizable claim for relief. Defendant filed a timely response on March 21, 1997, and Plaintiff has not filed a reply.

Fed.R.Civ.P. 8(a)(2) states that a claim for relief shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief." This rule expresses the principle of notice-pleading, whereby the pleader need only give the opposing party fair notice of the claim. *See Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Maclin v. Paulson,* 627 F.2d 83 (7th Cir.1980). In analyzing the sufficiency of a complaint, the Court is not limited to reviewing only the face of the pleadings, but may also incorporate any supportive briefs. "A plaintiff need not put all of the essential facts in the complaint. He may add them by affidavit or brief." *Hrubec v. Nat'l R.R. Passenger Corp.,* 981 F.2d 962, 963 (7th Cir.1992). *See also Early v. Bankers Life and Casualty,* 959 F.2d 75, 79 (7th Cir.1992). Defendant's response brief sets out specific factual allegations supporting his counterclaim. Rule 8 also requires that all pleadings be reviewed with a liberal pleading standard, drawing all inferences in favor of the pleader. *North Ave. Novelties v. City of Chicago,* 88 F.3d 441 (7th Cir.1996). Under the liberal pleading standards mandated by Rule 8, we find that Defendant pleads sufficient facts in his counterclaim to place Plaintiff on notice of the claims being asserted against her and we therefore deny Plaintiff's motion to dismiss Defendant's counterclaim on the ground that it consists only of conclusory and vague allegations.

Fed.R.Civ.P. 8(f)provides, "All pleadings shall be so construed as to do substantial justice." The liberal construction of pleadings mandated by Rule 8 compels the Court to construe a claim "by its substance rather than according to its form or label." 5

Wright & Miller, *Federal Practice and Procedure* § 1286 at 553–55 (2d ed.1990). Evaluating the substance of Defendant's counterclaim, the Court identifies three distinct claims: a claim for malicious prosecution, a claim for recovery of costs under Ind.Code 34–1–32–1 and a motion for sanctions under Fed.R.Civ.P. 11(b).

■ Defendant sets forth in paragraph 3 of his counterclaim "that Plaintiff's action is directed for the purpose of harassing and or maliciously injuring Defendant." This assertion appears to raise a claim of malicious prosecution. However, "one of the essential elements of an action for malicious prosecution is that the prosecution complained of has been legally terminated in favor of defendant or accused therein." 19 Indiana Law Encyclopedia, Malicious Prosecution § 10, at 129 (1959). The Indiana Court of Appeals has held, "A counterclaim predicated upon malicious prosecution of the action in which such counterclaim was filed should be dismissed." *First Fed. Sav. & Loan Ass'n v. Stone,* 467 N.E.2d 1226, 1235 (Ind.Ct.App.1984) (quoting *Hunter v. Milhous,* 159 Ind.App. 105, 305 N.E.2d 448, 453 (1973)). *See also Aluminum Co. of America v. City of Lafayette,* 412 N.E.2d 312 (Ind.Ct.App.1980).

In this case, the judicial proceeding upon which Defendant bases his counterclaim for malicious prosecution has not yet been terminated. As a result, Defendant's assertion of malicious prosecution cannot be supported by any judicial construction of the facts, as the essential element of termination of the proceeding cannot be met. Thus, the claim is premature and must be dismissed. *See Hunter v. Milhous,* 305 N.E.2d at 452–453 (holding that dismissal of counterclaim for malicious prosecution was proper because claim had not yet matured, as relief sought depended upon plaintiff prevailing in current action). To the extent that Defendant's counterclaim asserts a claim for malicious prosecution, we hereby *grant* Plaintiff's motion to dismiss Defendant's counterclaim as failing to assert a claim for which relief can be granted. We emphasize that Defendant's malicious prosecution claim is being dismissed without prejudice.

In addition to Defendant's claim for malicious prosecution, Defendant asserts a claim for costs under Ind.Code 34–1–32–1(b). That statute provides: "In an civil action, the court may award attorney's fees as part of the cost to the prevailing party, if it finds that either party: (1) brought the action or defense on a claim or defense that is frivolous, unreasonable, or groundless; (2) continued to litigate the action or defense after the party's claim or defense clearly became frivolous, unreasonable, or groundless; or (3) litigated the action in bad faith." Ind.Code 34–1–32–1(b). However, like a claim for malicious prosecution, a claim for recovery of costs under this statute expressly addresses costs to be awarded a prevailing party after the litigation upon which the claim is based has been finally determined in the claimant's favor. *See Strutz v. McNagny*, 558 N.E.2d 1103, 1106–1107 (Ind.Ct.App.1990). Defendant is asserting his claim under Ind.Code 34–1–32–1 before the judicial proceeding on which his claim is based has been decided finally in his favor. Therefore, Defendant's claim is not timely, and the Court hereby *grants* Plaintiff's motion to dismiss Defendant's claim for recovery of costs under Ind. Code 34–1–32–1. The Court notes that Defendant's claim for recovery of costs under Indiana law is also dismissed without prejudice.

In addition to the malicious prosecution claim and the claim for recovery of costs discussed above, upon review of the substance of Defendant's assertions, the Court determines that the remainder of Defendant's counterclaim should properly be construed as a motion for sanctions under Fed. R.Civ.P. 11(b). Rule 11 authorizes a court to impose sanctions, including attorney fees and costs, upon attorneys, law firms or parties for signing a pleading, motion or other paper that, after reasonable inquiry, they know is not well grounded in fact or not warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law.[7] *Pacific Dunlop Holdings, Inc. v. Barosh*, 22 F.3d 113, 118 (7th Cir.1994); *Burda v. M. Ecker Co.*, 2 F.3d 769, 773 (7th Cir.1993). Rule 11 is also violated when parties or their attorneys bring legal action for any improper purpose, such as to harass or needlessly increase the cost of litigation. *Pacific Dunlop*, 22 F.3d at 118; *Burda*, 2 F.3d at 773.

Even though the substance of Defendant's counterclaim is an assertion for sanctions under Rule 11, Defendant has failed to comply with the required form of such motion. Specifically, the rule directs the moving party to file a motion for sanctions separately from other requests or motions. Fed. R.Civ.P. 11(c)(1)(a). Rather than filing a separate motion for sanctions, Defendant asserted his motion for sanctions as part of a counterclaim. Rule 11 also provides a safe-harbor provision that prohibits a party from filing a sanctions motion if, within 21 days after the motion is served on the offending party, that party withdraws or appropriately corrects the challenged pleading. Fed. R.Civ.P. 11(c)(1)(A). Defendant filed and served the counterclaim on the same day, not allowing Plaintiff the 21-day delay in filing required under the rule. Further, by failing to entitle the motions for sanctions as such, and failing even to cite Rule 11 as the source of Defendant's counterclaim, Defendant did not adequately apprise Plaintiff of the motion for sanctions under Fed.R.Civ.P. 11. In light of Defendant's failure to comply substantially with the dictates of the rule, the Court hereby *grants* Plaintiff's motion to dismiss Defen-

---

7. Rule 11(b) states in relevant part:
    By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief formed after an inquiry reasonable under the circumstances,—
    (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
    (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
    (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery . . .
    Fed.R.Civ.P. 11(b).

dant's counterclaim to the extent it asserts a motion for sanctions under Rule 11.

Even if the Court were to accept Defendant's motion for sanctions as submitted, the motion is not timely asserted. Although Rule 11 contains no explicit provision relating to the proper time for bringing a motion for sanctions, the Advisory Committee Notes to the rule state, "The time when sanctions are to be imposed rests in the discretion of the trial judge. However, it is anticipated that in the case of pleadings the sanctions issue under Rule 11 normally will be determined at the end of the litigation." Fed.R.Civ.P. 11 advisory committee's note. The Seventh Circuit in *Kaplan v. Zenner*, 956 F.2d 149 (7th Cir.1992) held, "The situation contemplated by the committee notes is one in which the basis for factual allegations in pleadings cannot be determined until such time as the party claiming those facts has had an adequate opportunity to develop his proof." *Zenner*, 956 F.2d at 152. Otherwise, where appropriate, the court in *Zenner* recommends a prompt motion for sanctions as soon as the party has discovered an abuse of Rule 11, rather than waiting to the end of the litigation. *Zenner*, 956 F.2d at 151 (following *Mary Ann Pensiero, Inc. v. Lingle*, 847 F.2d 90, 100 (3rd Cir.1988)).

In the case before the Court, Plaintiff has advanced factual allegations that may only be finally evaluated at trial, as explicated earlier in our denial of Defendant's summary judgment motion. Thus, unlike *Zenner*, where the court determined that defendant was challenging plaintiffs' claims only as to legal sufficiency (*Zenner*, 956 F.2d at 152), Defendant's motion for sanctions challenges Plaintiff's claims on the basis of false factual assertions. Defendant Counterclaim ¶¶ 5, 7–10. Therefore, having concluded that the factual dispute between the parties is properly reached by a trier of fact, we view it as inappropriate to consider Defendant's motion for sanctions based on Plaintiff's pleadings at this time. The Court notes once more that Defendant's motion for sanctions is dismissed without prejudice.[8] Further, inasmuch as

the Court has dismissed all three cognizable claims, the Court hereby *grants* Plaintiff's motion to dismiss Defendant's counterclaim.

### III. CONCLUSION

Plaintiff has presented sufficient evidence from which a reasonable jury could infer that she worked more hours for Defendant than compensated in her weekly paychecks and that Defendant failed to furnish certain of her wage statements. Issues of credibility exist that create genuine issues of material fact, precluding a determination as to whether Plaintiff was paid all wages earned, whether the wages paid for all hours worked meet the minimum wage standards under federal and state law, and whether Plaintiff was furnished copies of her wage statements. Issues of credibility and questions of material fact are appropriately resolved by a trier of fact, not by the Court on a motion for summary judgment. Accordingly, Defendant's motion for summary judgment is hereby *denied.* In addition, Plaintiff's motion to strike Defendant's reply brief is *denied,* and Plaintiff's motion to dismiss Defendant's counterclaim for failure to state a claim for which relief can be granted is *granted,* as the Court dismisses without prejudice each of Defendant's claims contained therein.

---

8. The Court notes that the "outer perimeter" of timeliness in this District for a motion for sanctions under Rule 11 is 30 days after entry of final judgment. *See Smith v. CB Comm'l Real Estate Group, Inc.*, 947 F.Supp. 1282 (S.D.Ind.1996).